S. B. HARDT, Jr., and Aeromotive Metal Products, Inc., a California corporation, Plaintiffs,

v.

Herbert BRINK and Dorothy Brink, his wife, and the community composed thereof, Defendants.

No. 4994.

United States District Court
W. D. Washington, N. D.

March 27, 1961.

John J. Keough of Colvin & Williams, Seattle, Wash., for plaintiffs.

Gordon W. Moss of Evans, McLaren, Lane, Powell & Beeks, Seattle, Wash., for defendants.

LINDBERG, Chief Judge.

This is an action to recover damages resulting from the failure of an insurance man to advise his client to insure against a potential liability.

For the purpose of this opinion plaintiff, S. B. Hardt, Jr., who is the president and principal stockholder of Aeromotive Metal Products, Inc., a California corporation, will be referred to as if he were the sole plaintiff in this action and Herbert Brink will be referred to as the sole defendant although his wife and their community are joined as defendants.

The following admitted facts are taken from the pretrial order entered in this case.

Between 1949 and 1957 plaintiff was engaged in the manufacturing business in Seattle. During this period defendant was in the insurance business in Seattle and procured for the plaintiff all of his insurance, including fire insurance on the stock of goods of the corporation, fire insurance on the equipment of the corporation, and comprehensive liability insurance.

In the latter part of 1956 plaintiff entered into a written lease of a building then under construction in San Jose, California. The lease agreement was negotiated with the advice of counsel but it did not contain a provision exonerating the lessee from liability for damage to the building by fire, nor did it contain a provision whereby the lessor extended to the lessee the benefit of the lessor's fire insurance.

Plaintiff's comprehensive liability insurance policy sold to him by defendant contained a standard "care, custody and control" exclusion which exempted the insurer from property damage liability to property rented by the insured.

Prior to moving a portion of his operations to California plaintiff advised defendant that the new building was going to be leased. Plaintiff did not furnish a copy of the lease to defendant, advise him of its terms, or make any specific request with respect to the lease. Defendant did not request a copy of the lease or seek information as to its terms and conditions.

In July, 1957, a fire broke out on the premises occupied by plaintiff in California which substantially destroyed the building and did considerable damage to other portions of the building occupied by other tenants. As a result plaintiff was required to and did pay the lessor's insurer the sum of $41,954.24 for damage to the building. This amount has been stipulated by the parties as a reasonable settlement of plaintiff's liability.

Plaintiff seeks to recover this sum from defendant.

It is plaintiff's contention that defendant held himself out as an insurance expert and specialist, qualified to advise on all phases of insurance problems; as such he assumed a duty to inspect or have inspected any lease entered into by plaintiff and to advise plaintiff of his insurance needs thereunder; had the defendant done this plaintiff would have procured the necessary insurance to protect him against the loss that occurred and therefore defendant's breach of this duty was the proximate cause of plaintiff's financial loss.

Defendant, on the other hand, takes the position that the liability of an insurance agent or broker to his client is essentially contractual in nature and must be based upon a breach of a specific undertaking or agreement.

Since the plaintiff's cause of action is admittedly in tort it must first be determined which theory—tort or contract—will control in this action. Although the numerous cases involving suits by an insured against his broker or agent disclose a wide divergence of views on this issue (See Roady and Andersen, Professional Negligence, 298–308 (1960)) this case is based upon diversity of citizenship and the substantive law of Washington will control. In Roberts v. Sunnen, 1951, 38 Wash.2d 370, 229 P. 2d 542, 29 A.L.R.2d 165 the Washington Supreme Court clearly indicated that tort principles are applicable in an action against an insurance agent or broker for breach of a duty he has assumed. Thus, the crucial issue is, Did the defendant assume a duty to advise plaintiff as to his insurance needs?

Clearly, the ordinary insurance solicitor only assumes those duties normally found in any agency relationship. In general this includes the obligation to deal with his principal in good faith and to carry out his instructions. No affirmative duty to advise is assumed by the mere creation of an agency relationship. (See cases collected in 29 A.L.R.2d 171.)

However, this does not mean that the agent cannot assume additional duties either by express contract or a holding out. As stated in Mechem, Outlines of Agency, §§ 524 and 525 (4th ed. 1952) the applicable rule is:

"§ 524. *Duty to exercise reasonable care.* By accepting an employment whose requirements he knows, without stipulating otherwise, the agent impliedly undertakes that he possesses a degree of skill reasonably or ordinarily competent for the performance of the service, and that in performing his undertaking he will exercise reasonable care, skill and diligence. He does not agree that he will make no mistakes whatever, or that he will exercise the highest skill or diligence, but he does agree that he will exercise reasonable skill, and that he will take the usual precautions.

"§ 525. *Special skill required in some cases.* There are many cases, however, wherein more than the skill possessed by the ordinary man may reasonably be required. Thus, where the agent is employed and undertakes to serve in a capacity which implies the possession and exercise of special skill, as, for example, when an attorney at law, a physician, a broker, etc., undertakes to do some act in the line of his special calling, then the skill ordinarily possessed and exercised by persons pursuing that calling may reasonably be required.

"More than the ordinary skill may also be reasonably required where the agent, though perhaps not belonging to any of the specially skilled classes, has in the particular case specially undertaken to exercise or has held himself out as possessing extraordinary skill."

See also 3 C.J.S. Agency § 160; Prosser on Torts, 132 (2d ed. 1955); Mattieligh v. Poe, 157 Wash.Dec. 95, 356 P.2d 328. Whether or not an additional duty is assumed will depend upon the particular relationship between the parties. Each case must be decided on its own peculiar facts. The law here involved is not particularly startling nor is it necessarily an extension over previous cases. This is an age of specialists and as more occupations divide into various specialties and strive towards "professional" status the law requires an ever higher standard of care in the performance of their duties. Restatement (Second) Torts, § 299A (Tent. Draft No. 4, 1959).

In the instant case plaintiff testified that he first met defendant through his former partner who highly recommended him as an insurance man. Defendant was effective in securing a settlement of a fire loss where coverage was doubtful. There was uncontradicted testimony that the defendant assisted plaintiff in securing life insurance coverage and that plaintiff followed the defendant's recommendations. While most of the business transacted between the parties was carried on by telephone the letters in evidence from defendant to plaintiff tend to support plaintiff's contention that defendant advised and counseled him as to his insurance needs as a commercial account. Unquestionably the plaintiff had great confidence in the defendant's ability and relied upon and followed his recommendations.

Whether defendant intended to act as a consultant and counseler as well as a solicitor of insurance is not clear. But it is clear that through the designations on his letterheads and the stickers he attached to policies issued by his office defendant held himself out to be an insurance expert. Under the evidence I am convinced that by his conduct and business practices defendant permitted a reasonable inference to be drawn by his customers, such as plaintiff, that he was a person highly skilled as an insurance advisor and that plaintiff relied upon him as such. Under these circumstances defendant assumed a duty to advise plaintiff as to his insurance needs in connection with his business, particularly where such needs have been brought to defendant's attention.

882

As I have found that defendant did assume an affirmative duty to advise plaintiff the remaining question is, Should defendant, when he learned of the lease arrangement, have examined the lease for potential liability and advised the plaintiff to protect himself by insurance?

It has been suggested by defendant's counsel that this responsibility was more properly that of the plaintiff's lawyer. Although this may be true it does not follow that defendant, as a skilled insurance consultant, did not also have this responsibility. The evidence establishes that the potential liabilities of a tenant to a landlord as well as to others arising out of a lease agreement and insurance coverage available to protect against losses resulting therefrom are well known to experienced and prudent insurance agents and consultants.

It is particularly significant that plaintiff's expert witness, a man well qualified in the field of fire and casualty insurance, and possessing knowledge as to the standard practice of qualified insurance specialists in this community, testified, in substance, that a prudent insurance agent, when advising a client known to be occupying premises as a lessee, would examine or recommend an examination of the lease in order to ascertain possible liability thereunder and advise insurance coverage if necessary. More precisely, he testified that a lease was a "red flag" to an insurance agent; meaning I must assume, that whenever an insurance agent learns that a business client is occupying premises as a lessee, caution should be exercised to determine what possible liability might arise because of this relationship. This witness impressed me as well qualified in his field and I have accepted his testimony, there having been no expert testimony to the contrary. In fact, no other expert witness was called to testify.

Without setting forth the various types of coverage available to protect persons in a situation such as plaintiff found himself after the fire, it is sufficient to state that such insurance coverage is common and well known to fire and casualty insurance agents and was known to defendant.

I therefore conclude that defendant was under a duty to advise plaintiff as to his potential liability under the lease and to recommend insurance protection therefor. I further find that defendant breached this duty when he failed to so advise plaintiff and had such advice been given insurance coverage substantially in excess of the amount paid by plaintiff would have been secured. Thus, the defendant's negligence was the proximate cause of plaintiff's financial loss.

Judgment for plaintiff in the amount of $41,954.24, together with costs.