200 N.J. Super. 333 (1984)
491 A.2d 737
BERNARD SOBOTOR, PLAINTIFF-RESPONDENT,
v.
PRUDENTIAL PROPERTY & CASUALTY INSURANCE COMPANY AND CHARLES REDMOND, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 24, 1984.
Decided November 20, 1984.
*335 Before Judges MATTHEWS, FURMAN and COHEN.
Thomas Lenney argued the cause for appellants (Enright, Porter, Lenney & McGrath, attorneys; William L. Bracaglia on the brief).
*336 Richard Wildstein argued the cause for respondent (Goldstein, Ballen, O'Rourke & Wildstein, attorneys; David Joshua Michelson on the brief).
PER CURIAM.
In October 1980, plaintiff, who had recently moved to New Jersey from New York, contacted defendant Prudential Insurance Company in order to obtain automobile insurance. He was referred to insurance agent defendant Charles Redmond, with whom he subsequently met to discuss coverage. In response to Redmond's inquiry, plaintiff informed Redmond of the coverage and monetary limits provided by his policy in New York. Redmond advised plaintiff that he was required to carry Personal Injury Protection (PIP) and Uninsured-Underinsured Motorist Insurance (UMI).
Plaintiff requested $100,000/$300,000 liability coverage. Regarding additional coverage, it is not clear whether plaintiff told Redmond that he wanted to be "fully covered with whatever coverage was available" or to obtain "the New Jersey package that is the best available." In their brief, defendants acknowledge that plaintiff deposed that he requested the "best available" package regarding the rest of the insurance. Judge Alterman, however, made no finding as to which of the above two requests were made.
Without advising plaintiff that there were options available under PIP and UMI, Redmond provided plaintiff with a policy that contained a UMI liability limit of $15,000 on account of injury to or death of any one person and $30,000 on account of injury to or death of more than one person in any one accident. This satisfied the statutory minimum required under N.J.S.A. 17:28-1.1. At the time, Prudential offered UMI coverage in amounts of $100,000 and $300,000 for an additional $5 premium. Redmond was authorized to issue such coverage.
Plaintiff sustained serious injuries and permanent disabilities in a motor vehicle accident. The driver of the other vehicle, *337 who was allegedly at fault, maintained only the minimum $15,000/$30,000 insurance. Plaintiff instituted an action in the Law Division alleging negligence on the part of defendant Redmond in failing to advise him of the availability of the higher amounts of UMI coverage. Plaintiff sought to amend defendant Prudential's insurance policy to include UMI coverage to an amount of $100,000.
In a written opinion the Law Division judge denied cross-motions for summary judgment. Addressing the question of whether "an insurance agent has an affirmative duty to advise his client of the availability of higher monetary limits for the coverage requested," he found that such a duty exists and that defendant Redmond breached that duty owed to the plaintiff. He also identified certain unresolved issues of fact: whether defendant Redmond's breach was the proximate cause of the damages plaintiff sustained; the exact language used by plaintiff when requesting insurance from defendant Redmond, and the meaning to be given to said language.
At trial, Judge Rumana decided the proximate cause issue in favor of plaintiff and ordered the Prudential policy reformed. He found, as a fact, plaintiff would have purchased additional UMI coverage if it had been offered to him and found as a matter of law that it was not necessary for the plaintiff to show that he would have exercised the option.
The duty of care owed by an insurance broker[1] to a client has been set forth in Rider v. Lynch, 42 N.J. 465 (1964):
One who holds himself out to the public as an insurance broker is required to have a degree of skill and knowledge requisite to the calling. When engaged by a member of the public to obtain insurance, the law holds him to the exercise of good faith and reasonable skill, care and diligence in the execution of the commission. He is expected to possess reasonable knowledge of the types of policies, their different terms, and the coverage available in the area in which *338 his principle seeks to be protected. If he neglects to procure the insurance, or if the policy is void or materially deficient, or does not provide the coverage he undertook to supply, because of his failure to exercise the requisite skill of diligence, he becomes liable to his principal for the loss sustained thereby. [42 N.J. at 476]
Defendants and plaintiff disagree on how this standard applies to this case. Defendants claim that the standard does not impose on an agent or a broker a duty to inform a client of "all coverage which the particular company writes." Conversely, plaintiff argues that the Rider standard encompasses the duty to inform the client of additional protection available under UMI. In ruling for the plaintiff, Judge Alterman said that "... the standard must be flexible enough to govern a myriad of unanticipated circumstances."
Judge Alterman reached his decision by relying on four cases which recognize a duty, in certain circumstances, to advise a client of various aspects of insurance coverage. These cases all recognize that such a duty arises when there is a special relationship between the insurance agent and the client which indicates reliance by the client on the agent.
In the seminal case, Hardt v. Brink, 192 F. Supp. 879 (W.D. Wash. 1961), broker's failure to advise his client of eight years of the need for additional insurance coverage for newly leased premises constituted negligence. In deciding upon the appropriate standards of care owed to the client, the court stated:
Whether or not an additional duty is assumed will depend upon the particular relationship between the parties. Each case must be decided on its own peculiar facts. The law here involved is not particularly startling nor is it necessarily an extension over previous cases. This is an age of specialists and as more occupations divide into various specialties and strive towards `professional' status, the law requires an even higher standard of care in the performance of their duties. [192 F. Supp. at 881]
The court concluded that the broker was "under a duty to advise the plaintiff as to his potential liability (for loss as a result of fire) under the lease and to recommend insurance protection therefor." Id. at 882.
Defendants rely on Hardt, claiming that the following language supports their position:

*339 Clearly, the ordinary insurance solicitor only assumes those duties normally found in any agency relationship. In general this includes the obligation to deal with his principal in good faith and to carry out his instructions. No affirmative duty to advise is assumed by the mere creation of an agency relationship. [Id. at 880]
Following this quote, however, the opinion uses language which places serious limitations on the lack of duty to advise:
However, this does not mean that the agent cannot assume additional duties either by express contract or a holding out. [Id. at 881]
The record does not indicate that defendant Redmond expressly contracted to assume additional duties. It does, however, depict a "holding out" by Redmond of a special expertise in the insurance business. Plaintiff, who knew nothing about the technical aspects of insurance policies, placed faith in Redmond and relied upon his expertise. We think Redmond had a duty to advise respondent.
Defendants attempt to distinguish Hardt by asserting that it involves an agreement which necessitated insurance coverage whereas this case involves optional coverage. Regardless of the type of coverage sought, a client should be entitled to rely on the special skill and knowledge posessed by the agent in order to best obtain the desired coverage. It does not seem reasonable to permit an agent to withhold information which might prove useful to one seeking coverage simply because the insurance sought is not mandatory.
Aetna Cas. & Sur. Co. v. Ogus, Inc., 396 F.2d 667 (D.C. Cir.1967) also recognized that an insurance agent may have affirmative duties of full explanation. In Aetna, a general contractor was charged with negligent excavation, which resulted in damage to property adjacent to the work site. The general contractor's subrogee sued the contractor's insurance agent for failure to inform the contractor of the lack of excavation insurance. The court declined to find a breach of duty, relying on the fact that the general contractor had a history of deliberately obtaining less than full coverage.
*340 In Nowell v. Dawn-Leavitt Agency, Inc., 127 Ariz. 48, 617 P.2d 1164 (Ct.App. 1980), the court also recognized that certain circumstances may give rise to an affirmative duty on the part of an insurance agent to inform a client of the availability of various coverage. In Nowell, after her home was damaged by a torrential rainstorm, plaintiff sued her insurance agent for failure to inform her of the availability of flood insurance. Because plaintiff had an extensive background in construction and real estate and because the prior conduct of the parties negated the inference of a fiduciary relationship, the court declined to find the agent in breach.
In Stein, Hinkle, Dawe, etc. v. Continental Cas. Co., 110 Mich. App. 410, 313 N.W.2d 299 (Ct.App. 1981), a group of architects and engineers sued their insurance agent of ten years for the negligent failure to advise them of the consequences of not renewing their malpractice insurance and of the availability of a prior acts endorsement in their new policy. The court found that the agent breached a duty owed to these clients, based on the long-term nature of their relationship.
Judge Alterman correctly distinguished this case from the above-cited cases in two respects. First, this case involved a much less onerous and demanding duty than any of the duties involved in the cited cases. Here, the client contends that the agent has an obligation, when discussing coverage under statemandated UMI, to inform him of all available options. In the cited cases, the clients asserted a duty to advise of a particular insurance protection which was not then under discussion. This distinction serves to strengthen plaintiff's argument that Redmond's conduct constitutes a breach. Second, the four cases recognized the importance of a long-established relationship to the imposition of a duty to inform. Here plaintiff was a new client who obviously had no previous contact with defendants. Judge Alterman found that:
There is no reason why the obligation to convey information should require a long-term relationship of entrustment. While many clients need not rely on their insurance agents for either advice or information, for most insurance *341 customers reliance is implicit in the relationship. "Thus, an insurance broker, in dealing with his clients, ordinarily invites them to rely upon his expertise in procuring insurance that best suits their requirements." Rider v. Lynch, supra [42 N.J.] at 477. An insurance agent is expected to know the coverage available in the areas in which his principal seeks protection. Rider v. Lynch, supra, at 476. If he has a duty to inform his client that the amount of coverage requested is not available, and he surely has that duty, no greater or dissimilar burden is imposed by requiring him to advise his client that coverage in increased amounts is available. Both are merely different sides of the same coin. Acts of omission as well as acts of commission may give rise to a violation of a duty of due care. There is no basis to distinguish here between the misfeasance of giving erroneous information and the nonfeasance of giving no information.
We agree with Judge Alterman's analysis. Any individual seeking insurance should be able to rely on the expertise of the agent, regardless of the prior contract between the parties. The fiduciary nature of such a relationship should not depend solely upon the length of the relationship. Because of the increasing complexity of the insurance industry and the specialized knowledge required to understand all of its intricacies, the relationship between an insurance agent and a client is often a fiduciary one. Agents should be required to use their expertise with every client, not only those with whom they have a long-term relationship.
Appellants argue that the absence of a duty to inform is supported by Cox v. Santoro, 98 N.J. Super. 360 (App.Div. 1967) and Citta v. Camden Fire Ins., 152 N.J. Super. 76 (App.Div. 1977). In Citta, the court ruled that there was no duty to inform an insured of the expiration date of a fire insurance policy. Cox held that there was no duty to advise an insured that his automobile policy would not cover his son while driving a relative's car.
These cases are clearly distinguishable from this case. Both in Citta and in Cox, the insureds were charged with knowledge of the information at issue. The insured in Cox was not an unsophisticated consumer. He had been in the insurance business for 40 years, working as a casualty claims examiner for the last 15 or 20 years. In Citta, the expiration date of the *342 insurance was visibly printed on the policy and could have been immediately ascertained by the insured.
Plaintiff here is not a sophisticated insurance consumer nor were the UMI options visibly printed on his insurance policy. There is nothing in the record to indicate any other reason why he should be charged with knowledge of the options. Defendants' reliance on Cox and Citta is misplaced.
Defendants also argue that the duty owed by an agent is limited by what is specifically and expressly requested by the client. They argue that "a vague request for the `best available' insurance package is not tantamount to a specific request for maximum Uninsured  Underinsured Motorist Coverage." Such an argument does not, however, negate the existence of a fiduciary duty to inform respondent of the additional coverage. On the contrary, it would support the existence of such a duty. By asking for the "best available" insurance, respondent put Redmond on notice that he was relying on the agent's expertise to obtain the desired coverage.
Our courts have recognized that insurance policies are not ordinary contracts, but contracts of adhesion between parties not equally situated. Karl v. New York Life Ins. Co., 154 N.J. Super. 182, 185 (App.Div. 1977). In Harr v. Allstate Ins. Co., 54 N.J. 287 (1969), Justice Hall summarized well the disparity between an agent and a client:
Our expressions have come in a variety of issues and contexts, but all have indicated as their keystone the goal of greater protection to the ordinary policyholder untutored in the intricacies of insurance. We have realistically faced up to the fact that insurance policies are complex contracts of adhesion, prepared by the insurer, not subject to negotiation, in the case of the average person, as to terms and provisions and quite unintelligible to the insured even were he to attempt to read and understand their unfamiliar and technical language and awkward and unclear arrangement. Recognition is given to the usual and justifiable reliance by the purchaser on the agent, because of his special knowledge, to obtain, the protection he desires and needs, and on the agent's representations, whether that agent be a so-called `independent' but authorized representative of the insurer, or only an employee. We have stressed, among other things, the aim that average purchasers of insurance are entitled to the broad measure of protection necessary to fulfill their reasonable *343 expectations; that it is the insurer's burden to obtain, through its representatives, all information pertinent to the risk and the desired coverage before the contract is issued; and that it is likewise its obligation to make policy provisions, especially those relating to coverage, exclusions and vital conditions, plain, clear and prominent to the layman. [54 N.J. at 303-304]
This inequality of position requires that the agent deal with laypeople as laypeople and not as experts in subtleties of the law. Bowler v. Fidelity Cas. Co. of New York, 53 N.J. 313, 327 (1969). "Insurance brokers (and agents) have a responsibility in law to act toward their less expert clients in a way that is responsible in fact." Aetna, cited above, 396 F.2d at 670.
We find no merit in the additional arguments raised by defendants in their brief on appeal.
The order and judgment under review are affirmed.
NOTES
[1] We see no reason why the duty owed by a broker to a client should differ from the duty owed by an agent. The difference between a broker and an agent lies in the duties and responsibilities owed to the insurance carrier, not to the insured.