232 N.J. Super. 1 (1988)
556 A.2d 331
LEROY DANCY, PLAINTIFF-APPELLANT,
v.
EVELYN R. POPP, THE NATIONAL SURETY CORPORATION AND FIREMAN'S FUND INSURANCE COMPANY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 28, 1987.
Decided February 1, 1988.
*2 Before Judges KING, GAULKIN and GRUCCIO.
Donald N. Elsas argued the cause for appellant (Kent, Grayer & Rosenberg, attorneys).
Lars S. Hyberg argued the cause for respondent Evelyn R. Popp (Valore, McAllister, Westmoreland, Gould, Vesper & Schwartz, attorneys).
Cindy J. Baen argued the cause for respondents The National Surety Corporation and Fireman's Fund Insurance Company (Patricia Richmond Lebon, attorney).
PER CURIAM.
Following an automobile accident, plaintiff brought a personal injury action against one Anna Bates which was settled for $25,000, the limit of the Bates liability policy. Alleging that the settlement proceeds "did not fully and adequately compensate" him for his injuries, plaintiff brought the present action in which he set forth that he had obtained an automobile policy from defendants The National Surety Corporation (National Surety) and Fireman's Fund Insurance Company (Fireman's Fund) through defendant Evelyn R. Popp (Popp), their agent. Plaintiff alleged that Popp had failed to inform him "that he could purchase underinsured motorist coverage protection in an amount equal to the $100,000.00 liability protection issued on plaintiff's policy." Pleading theories of breach of trust, breach of fiduciary responsibility and negligence, plaintiff demanded damages of $100,000 and "a revision of the aforementioned policy to include underinsured motorist coverage protection in *3 the amount of $100,000.00." On defendants' motions for summary judgment, the complaint was dismissed. Plaintiff appeals.[1]
In support of their summary judgment motion, defendants relied solely on the fact that Dancy's signature on the application for the assigned risk policy appears directly below a printed paragraph entitled Applicant's Statement, which reads as follows:
I declare and certify that (1) I have tried and failed to obtain automobile insurance in this state within the preceding 60 days at rates not exceeding those applicable under the Association. (2) To the best of my knowledge and belief that all statements contained in this application are true and that these statements are offered as an inducement to the Servicing Carrier on behalf of the Association to issue the policy for which I am applying. (3) I realize that any misleading information or failure to disclose required information will be considered lack of good faith on my part and may void the application or cause cancellation of my coverage. (4) I will pay all premiums when due. (5) I designate as Producer of this insurance the producer or firm named in this application and I understand he is not acting as an agent of any company for the purpose of this insurance. (6) I agree that no coverage will be in effect if my premium remittance, which accompanies the application, and is forwarded to the Servicing Carrier, is justifiably dishonored by the financial institution. (7) I understand that the premium shown on this application is an estimated premium. The Servicing Carrier on behalf of the Association reserves the right to adjust the premium in accordance with the rates currently in effect either prior to or after the issuance of the Policy, whenever applicable. (8) I have been offered coverage up to at least the following limits: (a) bodily injury liability; $250,000.00 each person, $500,000.00 each accident; (b) property damage liability $100,000.00; (c) bodily injury and property damage $500,000.00 single limit each accident; (d) comprehensive and collision coverage; (e) uninsured motorist and underinsured motorist coverage $250,000.00 each person and $500,000.00 each accident for bodily injury; $100,000.00 each accident for property damage or $500,000.00 single limit except that these limits shall not exceed the policy limits for bodily injury and property damage liability, respectively; (f) personal injury protection coverage as required by law; (g) additional personal injury protection coverage required to be offered by law; and (h) any other automobile insurance required to be offered by law and subject to the limits stated in the law. The coverage and limits I have selected are shown under: "Coverages" on this application. I reject additional limits and coverages not selected. I *4 understand this rejection shall apply to all renewals and extension of coverage with the Association unless I notify the Association in writing to the contrary.
In opposing the summary judgment motion, Dancy submitted certifications in which he set forth that Popp recommended that $100,000 "in liability protection would be appropriate to protect me," but that she "did not advise me that you could purchase the insured/underinsured motorist coverage in the same amount." Indeed, Dancy certified, Popp "did not tell me that I could purchase this coverage for any higher than the amount she gave me, being thirty-five thousand dollars." At the end of their discussion, Popp "presented the form to me for my signature and I signed where she indicated," "I did not read the backside of the form before signing." Dancy affirmed that "[h]ad I been advised that I could also purchase uninsured/underinsured motorist protection for $100,000.00 I certainly would have purchased that option."
The motion judge gave the following reasons for dismissing the complaint:
The sole question, of course, is a narrow one, namely, whether this agent, admittedly in a fiduciary position, discharged the obligation to properly advise a customer. I find that there is no obligation legally to make a disclosure, or to provide advice in a particular form, that is written or oral. And certainly no obligation to provide advice in most forms. In this case it was clearly identified and written in a statement executed by the plaintiff which contained the information that the fiduciary was obliged to disclose, contained at least that and probably more. I do not see how the plaintiff can avoid the implications of that statement. I conclude that the fiduciary obligation was discharged in view of the statement and that as a result the motion must be granted.
We are satisfied that summary judgment was improvidently granted. As defendants acknowledge, Popp had a fiduciary duty to inform Dancy of the additional uninsured motorist coverage available to him. Walker v. Atl. Chrysler Plymouth, 216 N.J. Super. 255 (App.Div. 1987); Sobotor v. Prudential Property & Cas. Ins. Co., 200 N.J. Super. 333 (App.Div. 1984). Dancy's signature on the application immediately below the paragraph advising of the availability of additional UM coverage is certainly evidence that he was adequately informed. But the fact that Popp had obtained Dancy's signature cannot be *5 regarded as conclusive evidence that Popp had fulfilled her duty to inform. Nor can Dancy be charged as a matter of law with notice or knowledge of his UM options simply because he signed the application. Compare Citta v. Camden Fire Insurance Assoc., Inc., 152 N.J. Super. 76 (App.Div. 1977); Cox v. Santoro, 98 N.J. Super. 360 (App.Div. 1967).
If, in fact, Popp did not inform Dancy of the availability of additional coverage and did not explain that portion of the Applicant's Statement and only told Dancy where to append his signature, a factfinder could reasonably conclude that she had failed in her responsibility. Moreover, if Popp did not explain the Applicant's Statement and induced or knowingly permitted Dancy to sign the application without reading it, neither she nor the carriers can fairly argue that Dancy should have exercised a greater degree of prudence. See Heake v. Atlantic Casualty Ins. Co., 15 N.J. 475, 483-484 (1954); Schustrin v. Globe Indemnity Co. of New York, 44 N.J. Super. 462, 466-467 (App. Div. 1957). As Judge Conford said in a comparable setting, "the law must accord with the common practices in the business and the reasonable behavior of laymen dealing with agents selling or administering the placement of insurance for an insurer." Mattia v. Northern Ins. Co. of New York, 35 N.J. Super. 503, 509 (App.Div. 1955).
The February 18, 1987 summary judgment is reversed. The matter is remanded to the Law Division for trial.
GRUCCIO, J.A.D., dissenting.
This case presents a simple factual situation yet a legal principle with a much greater impact. My colleagues have come to a conclusion that I find inappropriate and I, therefore, must dissent.
Defendant is charged with not properly exercising her fiduciary duty as plaintiff's automobile insurance agent. Plaintiff claims that had he been adequately informed of the additional uninsured/underinsured motorist coverage available, he would *6 have chosen the higher limit. Yet, plaintiff signed a statement at the end of the policy acknowledging the fact that greater coverage was available and he rejected that coverage. He admits to not reading that statement.
"An insurance broker owes a duty to his client to exercise good faith and reasonable skill in procuring the insurance sought or needed by his client. Rider v. Lynch, 42 N.J. 465, 476 (1964)." Walker v. Atl. Chrysler Plymouth, Inc., 216 N.J. Super. 255, 259 (App.Div. 1987). This court has held that a broker or agent may be liable to his client for failing to offer or provide uninsured or underinsured motorist coverage in excess of the $15,000/30,000 statutory minimum. See Sobotor v. Prudential Property & Cas. Ins. Co., 200 N.J. Super. 333 (App.Div. 1984). In Sobotor, the court stated that "[p]laintiff... is not a sophisticated insurance consumer nor were the UMI options visibly printed on his insurance policy. There is nothing in the record to indicate any other reason why he should be charged with knowledge of the options." Id. at 342.
I do not dispute these authorities. What causes some discomfort is the majority's statement that "the fact that Popp had obtained Dancy's signature cannot be regarded as conclusive evidence that Popp fulfilled her duty to inform. Nor can Dancy be charged as a matter of law with notice or knowledge of his UMI options simply because he signed the application." Majority Opinion, supra, at p. 4.
My colleagues cite Citta v. Camden Fire Insurance Assoc., Inc., 152 N.J. Super. 76 (App.Div. 1977) and Cox v. Santoro, 98 N.J. Super. 360 (App.Div. 1967). In Citta, the court ruled that there was no duty to inform plaintiff of the expiration date of the fire insurance policy since it was visibly printed on the policy and easily ascertainable by the insured. In Cox, the court held that there was no duty to inform that particular plaintiff that his automobile policy did not cover his son while driving a relative's car because that plaintiff was a sophisticated insurance consumer who had worked in the insurance business for 40 years.
*7 Here, while plaintiff may or may not have been a sophisticated consumer, he was certainly charged with the knowledge of the UMI options. He charged himself by signing a very clear and specific statement containing the UMI options information. His signature appears directly below the UMI option information. There was no allegation of fraudulent inducement to sign. Such a statement most likely came into being from this court's statement in Sobotor concerning the UMI options being printed on the policy. See Sobotor, supra, 200 N.J. Super. at 342.
It is important to note that in opposition to the motion for summary judgment, plaintiff first filed a certification which only placed blame on Popp for her performance of her duty. A supplemental affidavit added a number of other facts including plaintiff's failure to read the statement. There were no allegations or facts suggesting fraud or any like conduct on defendant's part. The "Applicant's Statement" contained clear, visible and understandable language in response to Sobotor, supra. It is dangerous to permit supplemental affidavits which, as here, attempt to add facts to the point that there is enough to successfully oppose summary judgment. The danger is that successive affidavits will continue to be offered and crowd the record in a litigant's attempt to, hopefully, prove a non-existent claim.
Plaintiff acted imprudently by signing without reading the "Applicant's Statement." He assumed the risk of what was contained in that statement and accepted it as if he had read it. Recognizing that an insurance contract is an adhesion contract, we must also recognize that defendant should not be held responsible for plaintiff's poor judgment and imprudent act of signing without reading. If the contract is clear and the agent properly exercises her fiduciary duty, i.e., no negligence or fraud, that should be enough.
The "Applicant's Statement" was designed for the specific purpose of putting the applicant on notice. The signature *8 acknowledges that notice. To hold otherwise would require the insurance agent to list every possible option and combination of options and have the applicant initial each as accepted or rejected. Yet, the agent would still be required to record that procedure, stenographically or by video tape, so that absolute proof would be available. Such would be an overly burdensome and unnecessary requirement. Likewise, it would raise the cost of insurance which is already an extremely costly venture. Indeed, it appears that New Jersey has the dubious distinction of being the state with one of the highest, if not the highest, insurance rates in the country. Yet, the majority opinion, in practice, may result in such a procedure.
There is a point at which we all must be held accountable for our actions. The insurance application provided a specific statement as suggested by Sobotor. Plaintiff took the risk of signing the application without reading it, at least his affidavit so indicates. He now attempts to transfer that risk to the agent and hold her accountable because of his own clearly imprudent actions.
I would find that summary judgment was properly granted. There has not been presented any factual or legal issue that cannot be properly treated by summary judgment. Therefore, I would affirm.
NOTES
[1] The complaint also included a count seeking payment of certain PIP benefits. Apparently, that count was separately resolved.