248 N.J. Super. 64 (1991)
590 A.2d 241
LINDA LEE GRESHAM, WIDOW OF ALLWIN R. GRESHAM, DECEASED, PLAINTIFF-RESPONDENT
v.
MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 4, 1991.
Decided May 1, 1991.
*65 Before Judges DREIER and LANDAU.
Richard H. Bagger argued the cause for appellant (McCarter & English, attorneys; Eugene M. Haring, of counsel, Richard H. Bagger, on the brief).
*66 John V. Burns argued the cause for respondent (John V. Burns, on the brief).
The opinion of the court was delivered by DREIER, J.A.D.
Defendant, Massachusetts Mutual Life Insurance Company (MML), appeals from a Chancery Division judgment enforcing an equitable contract of life insurance between MML and Allwin R. Gresham, plaintiff's late husband. Plaintiff, Linda Lee Gresham, contends that MML should be deemed to have issued a $110,000[1] life insurance policy.
Decedent had been employed by Hatco Chemical Corp. for 23 years, ending December 31, 1986. Hatco provided group life insurance giving decedent $110,000 coverage as part its employee benefit plan. The plan, as required by N.J.S.A. 17B:27-24, offered its employees the right to convert the coverage to an individual policy within 31 days of termination of employment, without the necessity of a medical examination. In this case, the 31-day period expired January 31, 1987. Here, Hatco gave decedent his "Notice of Right of Conversion" in mid-December, amply complying with this requirement. The notice clearly stated in part:
If you desire to convert your life insurance, you must act promptly by making application and paying the first premium to Massachusetts Mutual Life Insurance Company within THIRTY-ONE DAYS following the date of termination of employment.
If you elect to convert, you should contact the closest Massachusetts Mutual Agency either in person or by mail....
On January 26, 1987, five days prior to the expiration of the 31-day period, decedent telephoned MML's Saddle Brook, New Jersey agency and spoke to Ronald Nalven, acknowledged to be a full-time agent employed directly by MML. He informed *67 Nalven that he wished to convert his policy, and requested that Nalven come to his home for that purpose. According to decedent's phone records, he spoke to Nalven for approximately three minutes. According to Nalven, during this time he told decedent that his (Nalven's) schedule would not permit the home visit, but that decedent should go to an MML office, sign the conversion form and pay the first premium. Alternatively, he stated that he could schedule an appointment with decedent after the conversion period expired, but in such event, he could provide information only concerning policies that would require evidence of insurability. Nalven asked whether decedent, then 42 years old, was in good health, and was assured that he was. Obviously, neither anticipated decedent encountering any problems in obtaining coverage even after the conversion date.
Although the issue is contested by MML, the judge found that Nalven actually went to decedent's home on January 29, 1987, two days before the conversion period expired.[2] Since Nalven testified that he recalled meeting with decedent after January 31, 1987, he remembered no discussion of converting the group policy. Although we do not have decedent's recollections, plaintiff testified that after the meeting decedent told her that Nalven informed decedent it was then too late to convert the policy. This statement was admissible not only to prove decedent's then state of mind under Evid.R. 63(12), but also to prove the included hearsay of Nalven's statement as an admission by defendant's agent, Evid.R. 63(9)(a). The evidence also could be admitted as a trustworthy statement of a decedent, *68 Evid.R. 63(32), if notice of the intent to introduce this statement had been given defendant.
There is no dispute that Nalven failed to bring with him forms for the conversion of the group policy and information concerning the premium for any converted policy. Instead, he had prepared and left with decedent descriptions of various new insurance policies and the amount of the premiums therefor. Decedent signed an application dated February 4, 1987 for one of the new policies which Nalven submitted to MML. The application was denied in late March, but was then resubmitted by Nalven. It was again (and finally) denied for underwriting reasons relating to decedent's health. Decedent's cancer was diagnosed the next month; he died December 12, 1987. When no insurance benefits were forthcoming, plaintiff instituted this action for benefits under the conversion policy, notwithstanding the fact that no formal conversion application had been presented, nor had the first year's premium been paid.
The trial judge determined that the application for new insurance was made under a mutual mistake of fact relating to decedent's health, and that the court could and should apply equitable principles and reform the MML agreement[3] to carry out his obvious intention to convert his group insurance rights to a private policy. The judge did not attribute any bad motives to Nalven, but rather determined that "he was trying to sell something that he thought was better," and thereby convinced decedent to change his position and buy the new insurance.
MML urges three basic reasons why we should reject the trial judge's conclusion. First, it argues that the claim is governed by the Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.A. § 1001 et seq., under which the trial judge lacked jurisdiction to enter judgment against defendant. *69 Second, defendant contends that decedent did not exercise his conversion rights in the manner and within the time period specified in the policy and that any equitable modification is precluded. Third, defendant asserts that even if State law applies, no grounds were proven for equitable relief. Defendant's additional evidence points have already been considered by us supra.
ERISA, in 29 U.S.C.A. § 1132(a), specifies that
A civil action may be brought 
(1) by a participant or beneficiary 
(A) for the relief provided for in subsection (c) of this section, or
(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
Subsection (a)(3) also permits actions by a participant, beneficiary or fiduciary for injunctive relief from a violation of ERISA or the terms of the plan, or to obtain other appropriate equitable relief. However, jurisdiction in actions under subsection (a)(3) resides exclusively in the federal courts, since 29 U.S.C.A. § 1132(e)(1) grants State courts jurisdiction solely for actions under subsection (a)(1)(B). Furthermore, 29 U.S.C.A. § 1144(a) generally preempts State substantive law relating to employee benefit plans described in ERISA. There is thus no question that Hatco's group insurance plan is governed by ERISA. Yet even under ERISA, if an insurer breaches its agreement with a beneficiary, certain redress may be obtained in either a State or federal court. However, the sole relief the trial judge could have considered, and that we may consider on this review, is the recovery by decedent or his beneficiary of benefits under the plan or the enforcement or clarification of his rights under the plan. 29 U.S.C.A. § 1132(a)(1)(B). Barnhouse v. Petrolite Corp., 700 F. Supp. 16, 17 (S.D.Tex. 1988); Imler v. Southwestern Bell Telephone Co., 8 Kan. App.2d 71, 650 P.2d 712, 714 (1982).
While the trial judge may have exceeded his non-preempted authority in exercising full equitable jurisdiction, similar analysis, *70 limited to the enforcement of decedent's or plaintiff's rights under the terms of the plan, might yield the same results. Thus, preclusion of a state court's exercise of its equitable powers does not require a finding for defendant on the facts before us.
The plan and the Notice of Right of Conversion provide that decedent was required to convert the group insurance within 31 days of termination of employment. Further, in order to effect conversion, decedent was required to make an application therefor, and pay the first year's premium. There was no requirement that he go to an office, only that he "should contact the closest Massachusetts Mutual Agency either in person or by mail." He did so. He spoke to Mr. Nalven and unambiguously told him that he wanted to convert his policy.
The judge found that Nalven came to decedent's home on January 29, 1987. Had Nalven then told decedent that the time had not expired, brought with him the conversion forms and informed decedent of the amount of the first year's premium, defendant's argument that decedent was bound by his decision to apply for new insurance in lieu of the converted policy might be unassailable.[4] At that meeting, however, decedent could not choose between the conversion policy and a new policy, since no information was apparently presented to him concerning the *71 conversion policy. He could not very well have determined whether to pay the premium on the conversion policy if he was never informed of the amount.
While the employment benefit plan has no express condition that the insurer's agents must inform the former employee of the amount of the conversion premium and supply an appropriate form to convert the policy, the plan need not be equitably reformed to provide such terms. Rather, these terms may be implied in law from the terms that are already present in the plan. To do otherwise would render the beneficiary's right to convert meaningless. Contrast the necessity for reformation in Weinisch v. Sawyer, 123 N.J. 333, 336-41, 587 A.2d 615 (1991). Here we have merely recognized implied terms in a contract; we find no necessity to reform it. While a beneficiary possibly could create his own form to apply for the conversion policy, without the insurer's input, the amount of the premium would be based upon pure speculation. See Donnelly v. Washington Nat'l Ins. Co., 136 Ill. App.3d 78, 90 Ill.Dec. 605, 611, 482 N.E.2d 424, 430 (1985).
As noted earlier, the trial judge did not find that Nalven was impelled by bad motives to withhold the application and renewal premium. Yet, if we give effect to the factual finding that Nalven went to decedent's home during the conversion period, it also appears that he failed to provide the application and amount of premium. Further, according to plaintiff he also misinformed decedent that the conversion period had expired.
As permitted by 29 U.S.C.A. § 1132(a)(1)(B), we "clarify [decedent's or plaintiff's] rights to future benefits under the terms of the plan." When an initial informal request is timely made for conversion, and an opportunity given to the insurer to present the form of conversion application and to inform the applicant of the amount of the first year's premium, the conversion period must be deemed extended until a reasonable time after the insurer has complied with this implicit term of the plan. Absent prompt pre-expiration action by the insurer after *72 the conversion inquiry, the timely submission requirement may even be said to be legally waived, at least until a reasonable time is given after late compliance by the company. Cf. Kubeck v. Concord Ins. Co., 103 N.J. Super. 525, 533-534, 248 A.2d 131 (Ch.Div. 1968), aff'd o.b., 107 N.J. Super. 510, 259 A.2d 473 (App.Div. 1969) (broker's assurance of ineffectiveness of cancellation); Highway Trailer Co. v. Donna Motor Lines, Inc., 46 N.J. 442, 449, 217 A.2d 617 (1966), cert. denied, 385 U.S. 834, 87 S.Ct. 77, 17 L.Ed.2d 68 (1966) (failure to supply proof of loss forms); Lumbermen's Mut. Ins. Co. v. Slide Rule & Scale Eng'g Co., 177 F.2d 305, 310 (7th Cir.1949); Kramer v. Metropolitan Life Ins. Co., 494 F. Supp. 1026, 1030-1031 (D.N.J. 1980) (failure to accept first premium); and see DiMarino v. Wishkin, 195 N.J. Super. at 393, 479 A.2d 444 (broker's failure to replace cancelled policy as requested by plaintiff and failure to inform insured that the coverage sought was not possible). Furthermore, if the beneficiary has been informed by the insurer's agent that the time period has run, when in fact it has not (there was no express finding to this effect by the trial judge and we need not make such a finding here), this misinformation should also be corrected. Cf. Donnelly v. Washington Nat'l Ins. Co., supra, 90 Ill.Dec. at 612, 482 N.E.2d at 431.
On the basis of the trial judge's factual findings and the law as we have here outlined, plaintiff is entitled to the insurance for which decedent clearly intended to apply. There are no significant different factual determinations necessary to support this legal theory for plaintiff "to recover benefits due to [her] under the terms of [decedent's] plan," 29 U.S.C.A. § 1132(a)(1)(B), and those necessary for the equitable determination made by the trial court. Cf. Weinisch, 123 N.J. at 336-41, 587 A.2d 615. The "plan" shall be deemed to include the above-described implicit duties of MML, and MML's failure to comply with its duties extended the time to exercise the option to convert at least until plaintiff's unsuccessful attempt to do so. Therefore, while we disagree (primarily because of the jurisdictional impediment) with the trial judge's equitable *73 theory, we fully agree with the result. We reiterate that we have found no necessity to reform the agreement between Hatco and MML. We have merely found that MML had breached the contract as it exists. We thus distinguish Weinisch, supra.
Affirmed.
NOTES
[1] The parties stipulated that the amount in difference is actually only $100,000 since the insurance actually applied for by decedent under the circumstances described infra was for the lesser amount of $100,000.
[2] There is sufficient credible evidence in the record to support the judge's finding. Decedent's personal diary showed the visit on that date, and was admissible under Evid.R. 63(32), although argument concerning admissibility centered around Evid.R. 63(13). Furthermore, printouts of alternative coverage plans and their respective premiums left by Nalven with decedent all reflected the January 29, 1987 date. The fact that decedent's actual application for new coverage was dated one week later, while evidentiary, does not require a contrary finding.
[3] As defendant argues, the only agreements here were the life insurance component of Hatco's retirement plan entered into between Hatco and MML and decedent's participation in the plan. The trial judge apparently intended to reform the terms of decedent's application for new insurance.
[4] We say "might" be unassailable, since, as noted at oral argument before us, plaintiff's attorney might have asserted a tort claim against Nalven and defendant for negligence. Although decedent considered himself in good health and therefore insurable, there was always the possibility of an undetected condition. The conversion form and premium could have been submitted conditionally prior to the January 31st date, together with the application for new insurance and a request that the conversion insurance be processed only in the event decedent was found unacceptable as a new risk after medical examination. The failure to explain these rights to decedent, if established, may well have been negligent. Cf. Sobotor v. Prudential Property & Cas. Ins. Co., 200 N.J. Super. 333, 491 A.2d 737 (App.Div. 1984); DiMarino v. Wishkin, 195 N.J. Super. 390, 393, 479 A.2d 444 (App.Div. 1984). This claim, however, was not included in the complaint before us against MML, and any personal claims against Nalven have been voluntarily dismissed.