[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In this action, the plaintiffs claim that the defendant Hartford Insurance Company of the Midwest ("the Hartford") was negligent in advising and/or providing insurance to them and is therefore responsible for losses the plaintiffs suffered as a result of being underinsured. They further allege that the Hartford owed them a fiduciary duty and breached that duty by falling to advise the plaintiffs to increase their automobile coverage. The defendants have moved for summary judgment on the grounds that 1) it owed no duty of care to the plaintiffs as to advising them on the availability of additional insurance coverage, and 2) it owed no fiduciary duty to the plaintiffs. In the companion matter, Mary Grossenbacher and MauriceGrossenbacher v. Ericson Agency and Karen Russell, doc. no. 73518, the defendants moved for summary judgment on grounds that include those raised in this motion.
The defendant filed this motion with a supporting memorandum and deposition excerpts on July 15, 1999; the plaintiffs filed an opposing memorandum on October 22, 1999. The defendant filed a reply memorandum on December 16, 1999. The court heard argument on February 21, 2000.
The following facts pertinent to this motion are undisputed. In CT Page 4507 December 1996, the plaintiff Mary Grossenbacher was involved in a motor vehicle accident in which one of the occupants of the other vehicle, namely David Nash, received serious physical injuries. Nash brought a civil action against this plaintiff for those injuries. That action concluded in a stipulated judgment against Mary Grossenbacher in the amount of $250,000. At the time of the accident, Mary Grossenbacher and Maurice Grossenbacher were named insureds of an automobile policy issued by the Hartford. The liability limit of that policy was $100,000 per person and $300,000 per accident. The Hartford paid $100,000 of the stipulated judgment. Under the terms of the stipulated judgment, Mary Grossenbacher paid $50,000 to Nash on July 15. 1998, and was ordered to pay $100,000 to Nash on or before November 30, 1999.
Maurice Grossenbacher was responsible for procuring all insurance for the family. The automobile insurance policy in effect at the time of the accident was procured by the plaintiff Maurice Grossenbacher through his membership in the American Association of Retired Persons. Some time around 1989, Maurice Grossenbacher requested a quote from the Hartford for the same liability limits he had at the time through another company. The Hartford mailed him a quote for the policy limits he requested. Next to the liability limits of $100,000/300,000 was the letter "R", indicating that this coverage was recommended in 1991. Maurice Grossenbacher purchased the automobile insurance policy from the Hartford and continued to renew this policy with the same limits to the time of the December 1996 accident. He never sought advice from the Hartford or its agents regarding the amount of automobile coverage or the availability of other types of insurance prior to December 1996. He did not talk with anyone from the Hartford either by telephone or in writing about his insurance coverage limits.
The plaintiffs originally brought this action in four counts, with two counts addressed to this defendant and two counts addressed to the first named defendant, Patrons Mutual Insurance Company of Connecticut ("Patrons"), the plaintiffs' homeowner policy provider. The court (Pickett, S.T.J.) struck the counts against Patrons on July 27, 1998. The plaintiffs filed a substituted complaint on August 28, 1998 in two counts addressed to the Hartford. The first count alleges that the Hartford was negligent in failing to advise or offer the plaintiffs additional insurance coverage. The second count alleges that the Hartford breached the fiduciary duty it owed the plaintiffs by failing to advise them to increase their insurance coverage. The damages the CT Page 4508 plaintiffs claim resulted are the use of personal assets to satisfy the judgment against Mary Grossenbacher, additional attorney's fees and the placement of a lien on their real property.
In this motion for summary judgment, the Hartford argues that as a matter of law there is no duty of care on its part to advise the plaintiffs as to the availability of additional insurance coverage nor was there any fiduciary relationship between the parties. The plaintiffs respond that a special relationship existed between the parties that created a duty of care and a fiduciary relationship.
Summary judgment must be granted if the pleadings, affidavits, and other documentary proof show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Practice Book § 17-49; Alvarez v. NewHaven Register, Inc., 249 Conn. 709, 714 (1999); Rivera v. DoubleA Transportation, Inc., 248 Conn. 21. 24 (1999); Orkney v.Hanover Ins. Co., 248 Conn. 195, 201 (1999). A "material" fact is one which will make a difference in the outcome of the case.Morascini v. Commissioner of Public Safety, 236 Conn. 781, 808
(1996). In ruling upon a summary judgment motion, the court merely determines whether an issue of fact exists, but does not try the issue if it does exist. Michaud v. Gurney, 168 Conn. 431,433 (1975).
The purpose of summary judgment is to eliminate the delay and expense accompanying a trial where there is no real issue to be tried. Dowling v. Kielak, 160 Conn. 14, 16 (1970); Dorazio v.M.B. Foster Electronic Co., 157 Conn. 226, 228 (1968). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party."Connecticut Bank Trust Co. v. Carriage Lane Associates,219 Conn. 772, 781 (1980).
While broken down into two separate grounds to correspond with two counts of the complaint, the defendant's motion rests on the single argument that, based upon the undisputed facts, it owed no duty to the plaintiffs. The particular facts upon which the defendant relies are that the Hartford issued an automobile liability policy requested by the plaintiffs but was not asked to issue or to proffer advice on any excess or umbrella liability insurance. Prior to December 1996, the plaintiffs never sought advice nor ever got in touch with any representative of the CT Page 4509 defendant to discuss insurance coverage limits. Further, the plaintiffs had no concerns regarding the amount of their automobile liability insurance coverage.
The plaintiffs response to the defendant's factual claim is that the defendant in fact recommended the coverage of $100,000/300,000 which was insufficient in light of the plaintiffs' financial position. They note that they both have little knowledge of how insurance works and relied on the defendant's recommendation in maintaining the $100,000/300,000 coverage. Finally, they claim it is significant that the defendant never inquired as to the plaintiffs' assets nor did they make the plaintiffs aware of the availability of excess or umbrella insurance.
Duty is a requisite element of a claim of negligence. See Lodgev. Arett Sales Corporation, 246 Conn. 563, 571 (1998). The question of whether a duty exists is a question of law; only if there is a duty does the question of a violation of that duty reach the trier of fact. Petriello v. Kalman, 215 Conn. 377,382-83 (1990). In deciding whether a duty exists, the court must consider the foreseeability of the harm.
 Although it has been said that `no universal test for [duty] ever has been formulated'; W. Prosser W. Keeton. [Torts (5th Ed. 1984)] § 53, p. 358; our threshold inquiry has always been whether the specific harm alleged by the plaintiff was foreseeable to the defendant. `The ultimate test of the existence of the duty to use care is found in the foreseeability that harm may result if it is not exercised. . . . By that is not meant that one charged with negligence must be found actually to have foreseen the probability of harm or that the particular injury which resulted was foreseeable, but the test is, would the ordinary [person] in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result?' . . . Frankovitch v. Burton, 185 Conn. 14, 20-21, 440 A.2d 254 (1981); Noebel v. Housing Authority, 146 Conn. 197, 200-201, 148 A.2d 766 (1959); Orlo v. Connecticut Co., 128 Conn. 231, 237, 21 A.2d 402
(1941). . . .
"A simple conclusion that the harm to the plaintiff was foreseeable, however, cannot by itself mandate a determination that a legal duty exists. Many harms are quite literally CT Page 4510 `foreseeable,' yet for pragmatic reasons, no recovery is allowed. See, e.g., Maloney v. Conroy, 208 Conn. 392, 400-401, 545 A.2d 1059 (1988) (looking beyond foreseeability, this court imposed limitations on the right of a bystander to recover for emotional distress that allegedly resulted from medical malpractice of doctors in their treatment of the plaintiff's . . . mother). A further inquiry must be made, for we recognize `that "duty" is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection.' W. Prosser W. Keeton, supra, § 53, p. 358. `While it may seem that there should be a remedy for every wrong, this is an ideal limited perforce by the realities of this world. Every injury has ramifying consequences, like the ripplings of the waters, without end. The problem for the law is to limit the legal consequences of wrongs to a controllable degree.' . . . Maloney v. Conroy, supra, 401-402. The final step in the duty inquiry, then, is to make a determination of `the fundamental policy of the law, as to whether the defendant's responsibility should extend to such results.' W. Prosser W. Keeton, supra, § 43. p. 281." RK Constructors, Inc. v. Fusco Corp. , 231 Conn. 381, 385-86, 650 A.2d 153 (1994).
Jaworski v. Kiernan, 241 Conn. 399, 405-06 (1997).
There is some further guidance from the Supreme Court in determining whether a duty exists between the plaintiffs and defendant in this case. An insurance broker is an agent of the insured in negotiating for a policy with an insurer. SeeMishiloff v. American Central Ins. Co., 102 Conn. 370, 379
(1925). As an agent for the insured, the broker "owes a duty to his principal to exercise reasonable skill, care, and diligence in effecting the insurance, and any negligence or other breach of duty on his part which defeats the insurance which he undertakes to secure will render him liable to his principal for the resulting loss." Ursini v. Goldman, 118 Conn. 554, 559 (1934). Further:
 Where he undertakes to procure a policy affording protection against a designated risk, the law imposes upon him an obligation to perform with reasonable care the duty he has assumed, and he may be held liable for loss properly attributable to his default.
Id. In Lewis v. Michigan Mutual Ins. Co., 154 Conn. 660, 664
CT Page 4511 (1967), the court cited the above authority and noted also,
 Once . . . the insurance is procured, the agency relationship between the insured and the broker terminates, and the broker is without any authority to do anything which further affects the insured unless expressly or impliedly authorized by the insured to do so.
Applying the above principles to this case, it is difficult to see the duty owed by this defendant to the plaintiffs. The undisputed facts are that the plaintiff Maurice Grossenbacher requested coverage in the amount of $100,000/300,000. Further, he never attempted to speak with anyone at the Hartford. There is no evidence in their opposing papers and supporting documentation[1] that the plaintiffs requested any coverage other than that provided in the policy or that the defendant did not properly procure the requested policy. See Home Ins. Co. v.Aetna Life Casualty, 235 Conn. 185, 202 (1995) ("[a]lthough the party seeking summary judgment has the burden of showing the non-existence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue"). The only allegations of negligence are that the defendant failed to advise the plaintiffs as to adequate coverage or to offer more coverage. Under the established Connecticut law, this defendant as insurance brokers or agent do not automatically have a duty to advise the plaintiffs as to adequate coverage nor do they have a duty to provide more coverage than requested. The plaintiffs argue that there was a special relationship between the defendant and them which created a fiduciary relationship and a duty to advise. Absent such a relationship no duty exists from the defendant to the plaintiffs in this action.
The defendant claims here that under the undisputed facts and applicable law, no fiduciary or special relationship exists between the plaintiffs and it. Based upon the plaintiff Maurice Grossenbacher's deposition testimony, the relationship between the parties consisted of an initial written application for a quote, the issuance of the policy with the requested limits and the annual renewal of the policy. There was no telephone contact nor any inquiry from the plaintiffs beyond the initial application arising from the plaintiffs' AARP membership. The plaintiffs argue that because the defendant recommended the coverage of $100,000/300,000 by placing an "R" next to those CT Page 4512 limits on the quote so that the plaintiffs were justified in relying on that in maintaining that coverage, a question of fact exists as to whether a fiduciary relationship exists between the parties.
While it is true that the Supreme Court has "specifically refused to define a fiduciary relationship in precise detail and in such a manner as to exclude new situations," it has set forth the characteristics of such a relationship as well as the attendant obligations. (Internal quotation marks omitted.) Alaimov. Royer, 188 Conn. 36, 41 (1982). Recently, in Murphy v.Wakelee, 247 Conn. 396, 400 (1998), the court reaffirmed those fiduciary obligations:
 A fiduciary or confidential relationship is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other. . . . The superior position of the fiduciary or dominant party affords him great opportunity for abuse of the confidence reposed in him. Once a [fiduciary] relationship is found to exist, the burden of proving fair dealing properly shifts to the fiduciary. . . . Furthermore, the standard of proof for establishing fair dealing is not the ordinary standard of fair preponderance of the evidence, but requires proof either by clear and convincing evidence, clear and satisfactory evidence or clear, convincing and unequivocal evidence.
(Citations omitted; internal quotation marks omitted.) As to the specific issue of whether an insurance agent owes a duty to advise, there is no Connecticut precedent.
Citing three Superior Court decisions, the plaintiffs propose that the duty to advise about the adequacy of coverage depends upon whether a special or fiduciary relationship exists between the parties. In those three cases, the court was confronted with the issue on motions to strike. See Katz v. Frank B. Hall Co.of Connecticut, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 084271 (October 30, 1987, Cioffi, J.) (3 CSCR 25); Winter v. Nationwide MutualIns. Co, Superior Court, judicial district of Litchfield, Docket No. 049205 (May 24, 1990, Pickett, J.) (1 Conn. L. Rptr. 668);Sportsmen's Paradise v. Peerless Ins. Co., Superior Court, judicial district of Litchfield, Docket No. 052606 (February 5, 1992, Dranginis, J.) (6 Conn. L. Rptr. 44). In all three cases, CT Page 4513 the courts noted that the issue of whether a fiduciary relationship existed was a question of fact not properly decided on a motion to strike. They all also cited a 1984 decision from the Appellate Division of the New Jersey Superior Court along with the above Connecticut Supreme Court authority on fiduciary relationships. The New Jersey decision includes the following language:
 Any individual seeking insurance should be able to rely on the expertise of the agent, regardless of the prior contract between the parties. The fiduciary nature of such a relationship should not depend solely upon the length of the relationship. Because of the increasing complexity of the insurance industry and the specialized knowledge required to understand all of its intricacies, the relationship between an insurance agent and a client is often a fiduciary one. Agents should be required to use their expertise with every client, not only those with whom they have a longterm relationship.
Sobotor v. Prudential Property Cas. Ins., 200 N.J. Super. 333,341, 491 A.2d 737 (1984).
In Sobotor, the insured brought suit against the insurer and insurance agent for failing to advise him of the availability of higher amounts of uninsured-underinsured motorist coverage. The trial court found for the insured and ordered the policy reformed. The facts of Sobotor, are, however, significantly different from the facts here. In that case, the plaintiff met with the insurance agent to discuss coverage and requested the "best available" package of automobile insurance coverage. Without advising him of the available options, the insurance agent provided the plaintiff with the statutory minimum limits of uninsured motorist coverage. The plaintiff was in a serious automobile accident where the offending driver maintained minimum liability coverage. The court denied cross motions for summary judgment, finding the existence and breach of a duty on the part of the insurance agent, but also finding unresolved issues of proximate cause as well as the actual language used by the plaintiff in requesting insurance. At trial, the court found in favor of the plaintiff on proximate cause. On appeal, the issue was the existence of a duty and the Appellate Division affirmed the trial court's finding on that issue.
Here, the plaintiffs never spoke to any representative of the defendant prior to December 1996, the date of the accident. There CT Page 4514 is no evidence that the plaintiff Maurice Grossenbacher ever requested advice as to appropriate coverages. After the initial quote and application, the plaintiffs' only contact with the defendant up to December 1996 was the yearly written renewals. The "R" placed next to the requested $100,000/300,000 limits on the quote in 1991 does not provide the basis for a special relationship. There was no request by the plaintiff for any recommendation beyond his existing limits. Without facts similar to those in Sobotor, this court will not impose a duty on the defendant that provides the plaintiffs with protection to which they are not entitled. Further, the court cannot extend the defendant's responsibility to that requested by the plaintiffs without ignoring the public policy concerns expressed by the court in Jaworski v. Kiernan, supra, 241 Conn. 407-408. Based upon the undisputed facts as to the relationship between the parties and under the applicable principles of law, the court finds that as a matter of law no unique degree of trust and confidence existed between the parties, nor did the duty of the defendant to the plaintiffs extend to providing unsolicited advice on coverage or proffering unsolicited insurance coverage.
The motion for summary judgment is granted.
DiPentima, J.