2000-NMCA-022

997 P.2d 150

**ESTATE OF Jerome J. GRIEGO, By and Through Eleanor GRIEGO, Individually and as Personal Representative of the Estate of Jerome J. Griego, Plaintiffs–Appellants,**

v.

**RELIANCE STANDARD LIFE INSURANCE COMPANY, Defendant–Appellee.**

No. 19,568.

Court of Appeals of New Mexico.

Feb. 1, 2000.

Steve Vogel, Albuquerque, Steven C. Henry, Albuquerque, Steven L. Tucker, Tucker Law Firm, P.C., Santa Fe, for Appellants.

Carl J. Butkus, R. Galen Reimer, Butkus & Reimer, P.C., Albuquerque, for Appellee.

## OPINION

PICKARD, Chief Judge.

{1} Eleanor Griego, individually and as personal representative of her deceased husband's estate, the Estate of Jerome J. Griego (Plaintiffs), filed suit against Reliance Standard Life Insurance Company (Reliance) for failing to convert Mr. Griego's group life insurance policy to an individual life insurance policy after he submitted a conversion application requesting Reliance to do so. The trial court dismissed Plaintiffs' suit after granting Reliance's motion for summary judgment on the grounds that Reliance had mailed Mr. Griego a notice to pay the premium, which he failed to pay. On appeal. Plaintiffs argue the trial court erred because (1) Reliance had a duty to inform Mr. Griego of the payment he had to remit in order to convert his insurance coverage and (2) Plaintiffs raised a factual issue as to whether Reliance breached its duty by presenting evidence that Mr. Griego did not receive a premium notice. Reliance argues the trial court did not err either on the duty issue or

on the breach issue, but that even if it did, this Court cannot review its decision because Plaintiffs failed to timely file a notice of appeal. We take jurisdiction of this case and reverse.

## BACKGROUND AND PROCEDURAL HISTORY

{2} Mr. Griego (Decedent) was employed by the City of Albuquerque (City) for a period of 25 years. As a City employee, Decedent was insured under a group life insurance policy (Policy) issued and maintained by Reliance. The City paid the policy premiums for Decedent while he was employed by the City.

{3} On July 1, 1993, Decedent retired from his employment with the City. As a covered City employee. Decedent had the right to convert (portate) the Policy to an individual policy upon his retirement. The Policy provided that in order for Decedent to portate his insurance coverage, he had to submit a written request within 31 days of his retirement. The Policy further provided that the effective date of conversion would be the thirty-first day following his retirement so long as "written request has been made [and] the premiums paid."

{4} Reliance distributed summaries of the Policy and its portability features to City employees like Decedent. One such policy summary provided that a covered employee like Decedent could portate his insurance by notifying Reliance "in writing within 31 days from the date [he retired] [and] ... remit[ting] the necessary premiums when due.... [Emphasis added.]" That same summary stated the premiums would be "billed directly to [the insured] on a quarterly, semi-annual or annual basis. [Emphasis added.]"

{5} While Reliance distributed these summaries to inform City employees about their conversion rights under their group policies, it inserted a proviso into these materials that "[i]f a conflict exists between a statement in [these summaries] and any provision of the Policy, the Policy will govern." This proviso reflected the integrated nature of the Policy, which stated: "The entire contract ... is the Policy, your application[,] ...

and any endorsements and amendments ...."

{6} Six days after he retired. Decedent filled out an application to portate his Policy. Reliance received Decedent's application on July 27; 1993. Reliance mailed Decedent an uncertified letter acknowledging receipt of his application on September 2, 1993. There is evidence that seven days later, Reliance mailed Decedent a letter advising him that in order to portate his Policy, he had to remit a premium payment in the amount of $44.72 by October 11, 1993. Plaintiffs deny that Decedent ever received that letter. According to that same letter, if Decedent did not remit payment by October 11. Reliance would close his file and "there [would be] no coverage in force."

{7} In January 1994, Decedent was hospitalized and was seriously ill for several months afterwards. On April 2, 1994, Decedent died. A few days later, Mrs. Griego filed a claim with Reliance for benefits as the sole beneficiary under her husband's Policy. Reliance denied her claim on the grounds that Decedent had failed to remit a premium payment.

{8} Plaintiffs filed suit, seeking damages from Reliance based on claims of breach of contract, insurance bad faith, violation of the New Mexico Unfair Practices Act, and negligence. In June 1997, Reliance filed the first of two motions for summary judgment. In September 1997, Plaintiffs filed the first of two motions to amend their complaint. The trial court heard Reliance's first motion for summary judgment on October 27, 1997. At the conclusion of the hearing, the trial court took Reliance's motion under advisement.

{9} On the following day, the trial court sent a letter ruling to the parties' attorneys in which it indicated it was going to grant Reliance's motion for summary judgment. The trial court directed Reliance to prepare the summary judgment order. The basis for the trial court's ruling was that due to Decedent's failure to remit a premium payment, "no new policy ever existed."

{10} In November 1997, Plaintiffs filed their second motion to amend their complaint. Plaintiffs asked the trial court to hear their motion to amend before entering the proposed summary judgment order Reliance had prepared. Plaintiffs made this request "to ensure that the [c]ourt has jurisdiction ... regarding whether a life insurance policy existed." On January 23, 1998, the trial court entered an order granting Plaintiffs' motion, and, on the same day, Plaintiffs filed their first amended complaint.

{11} On February 26, 1998, the trial court entered its "Order on Defendant Reliance Standard Life Insurance Company's Motion for Summary Judgment." The next day, Reliance filed an amended answer to Plaintiffs' first amended complaint. In March 1998, Reliance filed its motion for summary judgment "as to Plaintiff's [sic] First Amended Complaint." Reliance argued, among other things, that the trial court's February 26 summary judgment order was res judicata on the claims raised in Plaintiffs' first amended complaint.

{12} In May 1998, the trial court heard Reliance's second motion for summary' judgment. At the hearing's conclusion, the trial court announced it would grant Reliance's motion. On May 19, 1998, the trial court entered its "Order on Defendant Reliance Standard Life Insurance Company's Second Motion for Summary Judgment." On June 17, 1998, Plaintiffs filed their Notice of Appeal from the trial court's May order.

## DISCUSSION

### I. JURISDICTION

{13} Reliance claims this Court lacks jurisdiction over this appeal because Plaintiffs failed to timely appeal the trial court's first order of summary judgment. An order must be final to be appealable. *See Kelly Inn No. 102, Inc. v. Kapnison,* 113 N.M. 231, 238, 824 P.2d 1033, 1040 (1992). An order is not considered final unless all issues of law and fact have been determined and the case disposed of by the trial court to the fullest extent possible. *See Executive Sports Club, Inc. v. First Plaza Trust,* 1998–NMSC–008, ¶ 5, 125 N.M. 78, 957 P.2d 63. The trial court entered its first summary judgment order on February 26, 1998. Reliance asserts that Plaintiffs had thirty days within which to appeal this order. Plaintiffs did not file a notice of appeal, however, until

June 17, 1998. Reliance thus argues Plaintiffs' appeal is untimely.

{14} On February 26, the trial court effectively had two complaints before it—Plaintiffs' original complaint and Plaintiffs' amended complaint. In its February order, the trial court expressly granted Reliance's motion for summary judgment that had "come before [it] for hearing on October 27, 1997." Reliance's October motion pertained solely to Plaintiffs' original complaint as it was the only complaint Plaintiffs had pending before the trial court at that time. The trial court's order did not grant, nor could it have granted. Reliance's as yet nonexistent second motion for summary judgment on Plaintiffs' first amended complaint. The trial court's order did not address all issues of law and fact before it nor did it dispose of Plaintiffs' first amended complaint to the fullest extent possible. *See id.* Therefore we hold the trial court's February order was not a final order.

{15} Our holding is not disturbed by Reliance's argument that because Plaintiffs' amended complaint superseded its original complaint, the trial court's February order, which was entered after Plaintiffs filed their amended complaint, must be deemed a final order. While we do not disagree with Reliance's assertion that Plaintiffs' original complaint became a legal nullity when they filed their amended complaint, we do not see how that fact alters our conclusion. *But see Klasner v. Klasner*, 23 N.M. 627, 630, 170 P. 745, 746 ("[T]he amended complaint ... supersedes and supplants the original complaint."). If Plaintiffs' original complaint is a nullity, then the trial court's order must also be a nullity because it expressly granted Reliance's summary judgment motion only insofar as it pertained to Plaintiffs' original complaint. The trial court's only viable summary judgment order is its May 19, 1998, order, from which Plaintiffs timely appealed on June 17, 1998.

## II. DUTY TO NOTIFY

{16} The trial court granted Reliance's second motion for summary judgment pertaining to the first amended complaint on the grounds that Decedent failed to remit a premium payment and thus failed to portate his Policy. While Plaintiffs concede Decedent never remitted a premium payment, they disagree with the trial court's determination that this fact entitled Reliance to judgment as a matter of law. Plaintiffs contend Reliance had a duty to send Decedent a premium notice and that Reliance's alleged failure to fulfill this duty occasioned, and therefore excused. Decedent's nonpayment.

### A. Preservation of the Issue

{17} Reliance claims Plaintiffs cannot argue this issue on appeal because they failed to make an "implied duty argument ... in the District Court." Plaintiffs predicated their complaint on Reliance's alleged failure to fulfill its contractual duty to send Decedent a premium notice. For example, at the hearing held on Plaintiffs' motion to amend their complaint, Plaintiffs' attorney stated: "[Reliance] never takes the steps they're required [to] under this contract, which is bill [Decedent] for the premium notice and send it to him.... They breached their very own contract." The trial court perceived the "implied duty issue" Plaintiffs were raising and ruled: "I don't think [Reliance] breached any sort of a duty that they owed [Decedent] under the original group insurance contract." Plaintiffs thus brought the issue to the trial court's attention and prompted the trial court to rule on it. That is all Plaintiffs had to do in order to preserve the issue for appellate review. *See Cockrell v. Cockrell*, 117 N.M. 321, 323, 871 P.2d 977, 979 (1994).

### B. Standard of Review

{18} We can affirm the trial court's order awarding Reliance's motion for summary judgment only if the record reveals no triable issues of material fact and Reliance is entitled to judgment as a matter of law. *See Gardner–Zemke Co. v. State*, 109 N.M. 729, 732, 790 P.2d 1010, 1013 (1990). We must view the pleadings, affidavits, and depositions presented for and against a motion for summary judgment in a light most favorable to the nonmoving party. *See id.* Summary judgment is foreclosed when the record discloses the existence of a genuine controversy

concerning a material issue of fact. *See id.* Summary judgment is also foreclosed when the trial court granted summary judgment based upon an error of law. *See Garcia v. Sanchez,* 108 N.M. 388, 395, 772 P.2d 1311, 1318 (Ct.App.1989).

## C. Three Bases for Reliance's Duty

### 1. Policy Terms

{19} An insurance contract is construed by the same general principles that govern the interpretation of all contracts. *See Rummel v. Lexington Ins. Co.,* 1997–NMSC–041, ¶ 18, 123 N.M. 752, 945 P.2d 970. The construction of a particular word or phrase in a policy is for the trial court to make where its meaning is not dependent on disputed facts. *See id.* ¶ 19. When the policy language is clear and unambiguous, we must enforce it as written. *See CC Hous. Corp. v. Ryder Truck Rental, Inc.,* 106 N.M. 577, 579, 581, 746 P.2d 1109, 1111, 1113 (1987). However, we are not bound to enforce the language as written if that would lead to an absurd result. *See Sneddon v. Massachusetts Protective Ass'n,* 39 N.M. 74, 76, 39 P.2d 1023, 1024 (1935).

{20} The section of the Policy that is at the heart of the parties dispute is the section pertaining to Decedent's conversion rights. The pertinent clauses of that section provide:

> *Upon the Owner's written request,* an Insured may convert to any individual life insurance policy written by us, without proof of good health. Such conversion may be made while insurance is in force on his life or within thirty-one (31) days of termination of insurance under the Master Policy.
>
> . . . .
>
> The *effective date* of the individual conversion policy will be:
>
> (1) the date of the request for conversion if coverage under the group policy is in effect on that date and the premium has been paid; or
>
> (2) the thirty-first (31st) day following termination of the Insured's insurance under the group policy, *provided:*

(a) *written request has been made; and*

(b) the *premiums paid.*

[Emphasis added.]

{21} The Policy does not contain an express provision obligating Reliance to provide Decedent with a premium notice. We believe this term may be implied, however, from the terms present in the Policy. A contract includes not only the promises set forth in express words, but, in addition, all such implied provisions as are indispensable to effectuate the intention of the parties and as arise from the language of the contract and the circumstances under which it was made. *See Continental Potash, Inc. v. Freeport–McMoran, Inc.,* 115 N.M. 690, 704, 858 P.2d 66, 80 (1993). A court may have to imply terms in a contract when to do otherwise would render the contract absurd and meaningless. *See Gresham v. Massachusetts Mut. Life Ins. Co.,* 248 N.J.Super. 64, 590 A.2d 241, 245 (App.Div.1991).

{22} In *Gresham,* the insured-decedent (decedent) had a group policy that gave him the right to portate his coverage if he made the election " 'either in person or by mail' " within 31 days of termination of employment. *Id.* at 242 (quoting company's notice). The decedent did, in fact, contact his insurer and informed his insurance agent of his desire to portate his group policy. *See id.* at 243. The agent spoke with the decedent, but he failed to give the decedent a conversion application or a conversion rate. *See id.* The decedent died without ever having submitted an application or a premium payment. *See id.*

{23} The *Gresham* court held that, notwithstanding the decedent's failure to submit an application or a premium payment, his estate was "entitled to the insurance for which [he] clearly intended to apply." *Id.* at 245. The court observed that under the decedent's policy and its summary brochure

> decedent was required to convert [his policy] within 31 days of termination of employment[,] make an application therefor, and pay the first year's premium. There was no requirement that he go to an office, only that he "should contact [his insurer] either in person or by mail." He did so.

He spoke to [his agent] and unambiguously told him that he wanted to convert his policy.

*Id.* at 244. Based on its observation, the court held that the decedent's insurance policy implicitly obligated his insurer to supply him with both a conversion application form and the conversion premium. *See id.* at 245. The court reasoned that if these terms were not implied, the decedent's right to convert would be rendered meaningless. *See id.* "While a beneficiary possibly could create his own form to apply for the conversion policy, without the insurer's input, the amount of the premium would be based upon pure speculation." *Id.*

{24} In the case at bar, Decedent's Policy did not require him to contact Reliance in order to ascertain the conversion premium. Instead, Decedent only had to submit a written application to Reliance within 31 days of his retirement, which he did. Upon submitting his application, it is indisputable that Decedent still had to remit a premium payment before his Policy could be portated. However, it is also indisputable that Decedent could not have made a payment before he was first informed by Reliance of the premium that would be owed. The Policy would cease to make sense, and the parties' contract could not be honored, if Decedent were required to remit a payment without knowing just how much money to remit. We thus hold that Reliance had a duty to provide Decedent with a premium notice after he submitted his written application requesting portation.

{25} Reliance argues Decedent's lack of knowledge does not excuse his failure to remit payment. Reliance claims Decedent had the affirmative obligation to ask how much the conversion premium was and that his failure to do so distinguishes this case from *Gresham*. Reliance claims that the *Gresham* court held in the decedent's favor because he attempted to ascertain the conversion premium and the insurer withheld this information from him. Reliance is right to point out what steps the decedent in *Gresham* undertook to portate his insurance coverage, but Reliance fails to appreciate the lack of significance those steps have outside the particular context of the *Gresham* policy.

{26} In *Gresham*, the court mentioned the decedent's verbal communications with his insurer only because under the language of the policy that was one of the two ways he could elect to portate his policy. *See id.* at 245. Contrary to Reliance's suggestion, the court did not find that the decedent specifically asked the insurer to provide him with the conversion rate; instead, the court only found that the decedent had unambiguously told the insurer he wanted to portate his policy. *See id.* More critically, the court did not consider it important that the decedent had not specifically requested the conversion rate. The court held that the decedent, upon doing all he was required to do under his policy to initiate the conversion process, became entitled to a conversion application and the conversion rate. *See id.* We agree with the analysis in *Gresham* and hold that Reliance had a duty implied in the policy to notify Decedent of the premium owed.

## 2. Duty not to Prevent Performance

{27} Each party to an enforceable agreement has a duty not to prevent performance by the other party. *See Donnelly v. Washington Nat'l Ins. Co.*, 136 Ill. App.3d 78, 90 Ill.Dec. 605, 482 N.E.2d 424, 430 (1985). "A party to a contract, who prevents its performance by the adverse party, cannot rely on [the adverse party's nonperformance] to defeat his liability." *National Old Line Ins. Co. v. Brown*, 107 N.M. 482, 487, 760 P.2d 775, 780 (1988). The party who has been prevented from discharging his part of the obligation is to be treated as though he had performed it. *See id.*

{28} In *Donnelly*, the insured-decedent had a group life insurance policy that gave him the right to portate his insurance coverage within 31 days of termination of employment. *See id.* 90 Ill.Dec. 605, 482 N.E.2d at 427. The decedent wanted to portate his coverage, so he personally visited the insurer's office and asked his agent to send him a letter stating the rates for conversion. *See id.* The court held that when the decedent asked "about converting his group insurance to individual coverage, defendant ha[d] a

duty to inform him of the rate he [had to] pay to convert, because without that information the insured will be unable to convert." *See id.* 90 Ill.Dec. 605, 482 N.E.2d at 430.

{29} The *Donnelly* court's holding provides another basis for our determination that Reliance had a duty to provide Decedent with the conversion rate after he submitted his written application requesting portation. *See id.* The *Donnelly* court based its holding, not upon the implied terms of the parties' insurance contract, but upon the decedent's affirmative conduct. *See id.* The court recognized, as we do, that when a party to a contract does all that he can do to effect performance, the adverse party cannot disregard his actions without consequence, irrespective of the terms of the parties' contract.

{30} Reliance claims the *Donnelly* court based its holding on the fact that the decedent had asked the agent to mail him a letter containing the conversion rate and that the agent promised, but then failed, to do so. We disagree. The *Donnelly* court, like the *Gresham* court, relied exclusively on the decedents's oral requests for information because it could not point to anything the parties had reduced to writing. The court referred to the insurer's promises only in the context of its discussion of the insurer's breach of the "implied covenant of good faith cooperation." *Id.* 90 Ill.Dec. 605, 482 N.E.2d at 430. What was important in *Donnelly*, and what is important here, is that the insureds expressed an unequivocal interest in exercising a contractual right to portate their policies. Upon expressing this interest, the insurers incurred a duty to provide the insureds with the conversion rate.

### 3. Policy Summaries

{31} In addressing an insurance contract dispute, we must first attempt to resolve the dispute by resorting to the language of the insurance contract, itself. *See Rummel,* 1997–NMSC–041, ¶ 20, 123 N.M. 752, 945 P.2d 970. We may look to extrinsic evidence, however, if a party might reasonably have formed expectations in spite of the insurance policy's provisions due to the adverse party's affirmative conduct. *See id.* ¶ 21; *Barth v. Coleman,* 118 N.M. 1, 5, 878 P.2d 319, 323 (1994). Although we have already resolved the issue of whether the terms of Decedent's Policy gave rise to Reliance's duty to provide him with a premium notice, we nevertheless examine Plaintiffs' claim regarding Decedent's reasonable expectations because we believe such an examination reinforces the duty we have recognized today.

{32} Reliance provided Decedent with certain policy summaries in order to explain the steps Decedent had to take to portate his Policy. One such policy summary stated in relevant part:

### PORTABILITY

You can continue your insurance coverage under the Policy, and that of your insured Dependents, if any, if coverage would otherwise terminate because you cease to be eligible, or the Participating Unit terminates, provided you:

A. *notify us in writing* within 31 days from the date you cease to be eligible or the Participating Unit terminates:

B. *remit the necessary premiums when due;* and

. . .

Premiums will be *billed directly to you* on a quarterly, semi-annual or annual basis.

[Emphasis added.] Another policy brochure provided in relevant part:

### PORTABILITY

If you terminate employment after your coverage has started, you may elect, within 31 days of termination of eligibility, to continue your group term life insurance. *Premiums will be billed directly to you* on a quarterly, semi-annual or annual basis.

. . .

### OFTEN ASKED QUESTIONS . . .

. . .

Q. If I leave employment here, can my insurance be continued?

A. Yes, you can continue your insurance. *The premiums will be billed directly to you by Reliance Standard Life.* The amount of coverage and the costs will

continue unchanged as if you were still employed.

[Emphasis added.]

{33}   We believe Reliance's policy summaries could create the reasonable expectation in an insured that he would receive a premium notice from Reliance if he submitted a conversion application within 31 days of his retirement.   If Plaintiffs can prove Reliance provided these policy summaries to Decedent, the doctrine of reasonable expectations could reinforce a duty on the part of Reliance to give Decedent a premium notice. *See Barth,* 118 N.M. at 5, 878 P.2d at 323.   If Reliance failed to give Decedent such a notice, it cannot rely on Decedent's failure to remit payment as the basis for denying Plaintiffs' claim. *See National Old Line Ins. Co.,* 107 N.M. at 487, 760 P.2d at 780.

### 4.   Reliance's Arguments Against the Duty

{34}   Reliance argues that, under the plain language of the Policy itself, Decedent had only until August 1 to both make application to portate and pay the premium.   This argument is somewhat disingenuous inasmuch as Reliance's own documents show that it was inviting Decedent to pay the premium as late as September 9. Reliance similarly contends that the September 9 letter must have been an invitation to purchase new insurance.   However, by its terms, the September 9 letter plainly refers to "[a] continuation of coverage you requested."

{35}   In a like vein, Reliance argues that NMSA 1978, § 59A–21–19 (1984) defeats any expectation Decedent may have developed after reading Reliance's policy summaries. Under Section 59A–21–19, an insured is entitled to portate his insurance "provided application for the individual policy shall be made, and the first premium paid to the insurer, within thirty-one (31) days after . . . termination [of employment]."   Reliance claims this language clearly requires an insured to submit both an application and a premium payment within 31 days of his retirement, or else he forfeits his portation rights.

{36}   Whether Section 59A–21–19 must be interpreted in the way Reliance suggests is irrelevant to our discussion because that section is modified by another statute, which states:

A.   No policy of group life insurance shall be delivered in this state *unless it contains in substance* the provisions as required by Sections 409 through 419 [59A–21–12 to 59A–21–22 NMSA 1978] of this article *or provisions* which, in the superintendent's opinion, are *more favorable to the persons insured, or at least as favorable to the persons insured and more favorable to the policyholder.*

NMSA 1978, § 59A–21–11 (1984) (emphasis added).   In light of Section 59A–21–11, it is clear Section 59A–21–19 provides a baseline level of insurance coverage portation rights. We may assume without deciding, that under Section 59A–21–19 an insurer can insist upon the insured submitting both a conversion application form and a premium payment within 31 days of his retirement in order to portate his group policy, but that section does not mandate an insurer to so insist. Reliance's policy is "more favorable to the person insured" and thus is enforceable under Section 59A–21–11.   Thus, if Reliance failed to mail Decedent a premium notice, it cannot defeat his coverage by relying on Section 59A–21–19. *See National Old Line Ins. Co.,* 107 N.M. at 487, 760 P.2d at 780.

{37}   Reliance claims that even if Decedent received absolutely no information concerning his conversion privilege, his window of time within which to portate his Policy was circumscribed by NMSA 1978, § 59A–21–22 (1984).   Reliance argues that under Section 59A–21–22, Decedent had at most 60 days from the expiration date of his Policy, or until September 30, 1993, to portate his Policy.   According to Reliance, "there is a legislative policy at work and controlling [here]— one of finality, not perpetuity."

{38}   Reliance's dependence on Section 59A–21–22 is misplaced.   Section 59A–21–22 comes into effect only "if [an insured] is not given notice of the existence of such right." Reliance contends, and Plaintiffs admit, that Decedent with a premium notice after he expressed his desire to portate his Policy. Our legislature's interest in promoting finality is not at issue here.   What is at issue is

the parties' obligations under Decedent's Policy.

{39} Reliance finally argues that Plaintiffs could not wait indefinitely for a premium notice, delaying to see what develops, and then retroactively say that they in fact wanted to continue the insurance coverage at the time Decedent died. *See Bezanson v. Metropolitan Ins. & Annuity Co.*, 952 F.2d 1, 6 (1st Cir.1991). While we can agree with Reliance that people in Plaintiffs' shoes cannot wait indefinitely, even the *Bezanson* case, on which it relies, states that the time limit is one of reasonableness. We need not decide here what might be an outer limit of reasonableness. The facts of this case are that Decedent was hospitalized and died well within the time during which the summaries of the Policy could be construed to say that he would be billed for the premium. ("Premiums will be billed directly to you on a quarterly, semi-annual or annual basis.") For the reasons stated, we conclude that the trial court could not have granted summary judgment by concluding that Reliance did not have to provide Decedent with a premium notice. *See Garcia*, 108 N.M. at 395, 772 P.2d at 1318 (holding that summary judgment may be reversed when it is based on an error of law).

### III. MAILING OF PREMIUM NOTICE

{40} At the trial court level, Reliance proffered two documents to make its prima facie case that it mailed a premium notice to Decedent: (1) an unsigned letter, dated September 9, 1993, advising Decedent of the required premium and (2) the affidavit of one of its employees purporting to establish a pattern of how documents are mailed and thereby giving rise to the inference that the unsigned letter was likely mailed as well. Plaintiffs argue several reasons why these two documents do not give rise to an inference of proper mailing and thus fail to make Reliance's prima facie case. We do not need to pass judgment on them because we find that, for purposes of opposing summary judgment, Plaintiffs rebutted any inference of proper mailing by presenting evidence that Decedent did not receive a premium notice.

{41} Mrs. Griego and her daughter, Joanna L. Gallegos, testified that the premium notice was never received at the Griego household. They testified that the mail was always kept on the kitchen room counter in plain view and that they never saw the two letters Reliance allegedly sent to Decedent in September 1993.

{42} Reliance claims that "[w]hether the letter was received or not is irrelevant." We disagree. The testimony Mrs. Griego and Mrs. Gallegos provided of non-receipt was sufficient to create a factual question as to whether Reliance properly mailed Decedent a premium notice. *See Myers v. Kapnison*, 93 N.M. 215, 217, 598 P.2d 1175, 1177 (Ct. App.1979) (ruling that the affidavits from three addressees and one non-addressee that they did not receive a letter allegedly mailed to them by the adverse party raised a factual question as to whether the letter was properly mailed). Accordingly, the trial court committed reversible error. *See Gardner–Zemke Co.*, 109 N.M. at 732, 790 P.2d at 1013 (ruling that summary judgment is foreclosed when there exists a material factual issue).

### CONCLUSION

{43} For the reasons stated above, we reverse summary judgment and remand for a trial on the merits.

{44} **IT IS SO ORDERED.**

BOSSON and SUTIN, JJ., concur.