**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2009-NMCA-082**

**Filing Date:  June 30, 2009**

**Docket No. 28,694**

**IN THE MATTER OF THE ADOPTION**
**PETITION OF HOMER F. and JOYCE F.,**

      **Petitioners-Appellees,**

**v.**

**JEREMIAH E.,**

      **Respondent-Appellant,**

**and**

**IN THE MATTER OF SAM JACKSON F.,**

      **a Child.**

**APPEAL FROM THE DISTRICT COURT OF EDDY COUNTY**
**J. Richard Brown, District Judge**

Jane B. Yohalem
Santa Fe, NM

for Appellees

Caren I. Friedman
Santa Fe, NM

Collopy Law Office
Michael John Collopy
Hobbs, NM

for Appellant

Roxanne Lara
Carlsbad, NM

1

Guardian ad Litem

**OPINION**

**CASTILLO, Judge.**

**{1}** Grandparents filed a petition to adopt Father's child (Child) and served Father with a motion to imply his consent to the adoption. After two separate hearings on the matter, two orders were entered—one in December 2006 (2006 order) and another, amended order in June 2008 (2008 amended order)—implying Father's consent to the adoption of Child. Father filed an application for interlocutory appeal of the 2008 amended order, which was granted. On appeal, we necessarily examine the effect of the 2006 order and conclude that the 2006 order was a final, appealable order and, further, that once the order was entered and not timely appealed, Father was no longer a party to the adoption proceedings. Accordingly, we quash this interlocutory appeal and remand to the district court for further proceedings consistent with this opinion.

**I.     BACKGROUND**

**{2}** Child was born to Mother and Father on January 24, 1999. Mother and Father were never married. From birth, Child has lived with his maternal grandparents (Grandparents). In April 1999, Grandparents were appointed guardians and conservators over Child. Eight years later, in September 2006, Grandparents filed a petition for adoption under the Adoption Act, NMSA 1978, Sections 32A-5-1 to -45 (1993, as amended through 2007) (Adoption Act).

**{3}** As a part of the petition for adoption, Grandparents filed a motion requesting the district court to imply the consent of Father, pursuant to Section 32A-5-18. Father, acting pro se, filed a response to the petition and contested the adoption. In early November 2006, the district court held a hearing on the consent issue and orally ruled that Father's consent should be implied. After the hearing, Father obtained counsel and on December 8, 2006, filed a second response to the petition for adoption. In addition, Father filed a motion to reconsider and vacate the ruling made by the district court at the November 2006 consent hearing. On December 14, 2006, the district court held a hearing on Father's motion. The next day the district court entered the 2006 order, which implied Father's consent based on his failure to care for, communicate with, and support Child during the requisite time period set forth in the statute. *See* § 32A-5-18(A). In addition, based on the arguments at the hearing, the district court appointed a guardian ad litem. The 2006 order was not signed by Father's counsel prior to its entry.

**{4}** Nearly a year passed before the next action was taken in the case. Apparently in response to the retirement of the original judge, Grandparents and Father stipulated to the assignment of a new judge. A status conference was conducted in December 2007, and the district court indicated that it would listen to the tapes of the December 14, 2006 hearing and

2

then set the case for either a second status conference or an adjudicatory hearing on the petition for adoption.

{5} In February 2008, the district court issued a letter to Father, Grandparents, and Child's guardian ad litem. In that letter, the court outlined its understanding of the case: that Father's consent had been implied over objection; that the parties understood the 2006 order to be final; that Father had requested and been given time to file proposed findings and conclusions, but he did not file either; that Father had indicated that he was going to appeal the 2006 order, but no appeal was filed; that Father was not entitled to notice of further proceedings; and that Father was no longer a party to the cause. Father responded to the letter with a motion to reconsider. He argued that he was still a party to the adoption proceeding and that the 2006 order was not final.

{6} The district court held a hearing on Father's motion and, as a result of the hearing, the district court entered the 2008 amended order. That order, in relevant part, permitted Father to take an interlocutory appeal of the consent determination and stayed the proceedings pending the outcome of the appeal. Father applied for and this Court granted an interlocutory appeal of the 2008 amended order. Additional facts will be developed as the issues are discussed.

## II. DISCUSSION

{7} "Adoption, unknown at common law, is a creature of statute" and "[i]n New Mexico, adoption is governed by the Adoption Act, the interpretation of which is an issue of law we review de novo." *Helen G. v. Mark J.H.*, 2008-NMSC-002, ¶ 7, 143 N.M. 246, 175 P.3d 914 (internal quotation marks and citation omitted).

{8} After interlocutory appeal was granted, this Court assigned the case to the general calendar, with directions for the parties to address finality of the 2008 amended order. In this regard, the parties also addressed the finality of the 2006 order. We observe that if the 2006 order is final, there are no issues for this Court to consider because no timely appeal was filed. Father argues that we can consider his appeal because the 2006 order was interlocutory, the 2008 amended order properly modified the 2006 order and was also interlocutory, and his appeal from the 2008 amended order was timely. Specifically, Father asserts that the 2006 order was not final because the court had not fully disposed of the petition and because it would be unjust under the circumstances of the present case to prevent Father from participating as a party in the adoption proceeding. Father also argues that the 2006 order is void for lack of certain required signatures. We begin with Father's finality arguments.

## A. Finality of the 2006 Order

{9} Rule 1-054(B)(2) NMRA governs the finality of judgments upon multiple parties; it states that a "judgment may be entered adjudicating all issues as to one or more, but fewer

3

than all parties." Rule 1-054(B)(2) further states that "[s]uch judgment shall be a final one unless the court . . . expressly provides otherwise and a provision to that effect is contained in the judgment." *Id.* No such provision was included in the 2006 order. An order is final when all issues of law and fact have been determined and the case is disposed of by the district court to the fullest extent possible. *Estate of Griego ex rel. Griego v. Reliance Standard Life Ins. Co.*, 2000-NMCA-022, ¶ 13, 128 N.M. 676, 997 P.2d 150. Father argues that because the district court has not yet adjudicated the allegations of the petition, the case has "by no means been disposed of to the fullest extent possible." Father's primary argument is that even if his consent is implied, he still has the right to participate in the adoption proceeding until the final order of adoption is entered. Although we agree that the petition remains yet to be acted upon, once Father's consent has been obtained in some fashion, we see no statutory role for him to play in that proceeding. We address each of Father's points in the context of our analysis.

## 1. The Statutory Effect of Consent

{10}     Father argues that the 2006 order is not final because "all it does is find that Father impliedly consented to the adoption." Based on review of the Adoption Act, however, we conclude that any finding of consent to adoption effectively terminates the consenting parent's rights to participate further in the adoption proceeding and, thus, an order of implied consent is final as to that parent. The Adoption Act recognizes three types of a father: an acknowledged father, an alleged or biological father, and a presumed father. *See* § 32A-5-3(F), (G), (V). Different rights are afforded fathers of different status. *See Helen G.*, 2008-NMSC-002, ¶¶ 8-10. Father's status is not clear from the record. At oral argument before this Court, however, the parties agreed that Father is Child's acknowledged father. Accordingly, Father's consent to adoption or relinquishment of parental rights is required. Section 32A-5-17(A)(5) (requiring the consent of the adoptee's acknowledged father).

{11}     Consent may either be voluntarily obtained, *see* § 32A-5-21, or implied by the district court based on a parent's actions. *See* § 32A-5-18(A). "The implication of a consent or relinquishment under this section shall have the same effect as though the consent or relinquishment had been given voluntarily." Section 32A-5-18(B). The Adoption Act additionally sets out the time frame in which the necessary consents must be obtained or adjudicated before the district court may determine the merits of the petition for adoption. *See* § 32A-5-18(C) (requiring the district court to "render its decision on the implied consent prior to proceeding with the adjudicatory hearing"); *see also* § 32A-5-36(F)(3) (requiring the district court to determine at the time of adjudication that all necessary consents have been obtained). A parent who provides voluntary consent waives the right to notice of further proceedings on the petition. *See* § 32A-5-21(A)(12). Thus, because the effect of a voluntary consent is imputed to an implied consent, *see* § 32A-5-18(B), a parent who is the subject of an order of implied consent has no right to notice of further proceedings on the petition.

{12}     In addition, consent to adoption cannot be withdrawn—even prior to the adjudication of the petition—unless the parent can establish fraud. *See* § 32A-5-21(I). Although fraud is not an issue here, we further address the statutory procedure for establishing that parental

consent was fraudulently obtained in order to demonstrate the parent's limited role once consent has been established. Under Section 32A-5-36(D), any procedure initiated on a fraud petition must be concluded by the biological parent before the district court adjudicates the merits of the petition for adoption. Thus, all issues regarding a parent's consent are required to be resolved before the petition for adoption is adjudicated.

**{13}** Father cites *Helen G.* to argue that the order implying his consent to the adoption is not final because his legal rights in Child remain intact until the final decree of adoption is entered. *Helen G.* held that a father who is neither the presumed nor the acknowledged father of the child does not have the right to withhold his consent to an adoption. 2008-NMSC-002, ¶ 51. The Court concluded that Section 32A-5-37(B) "effectively" terminated the legal relationship between biological parents and a child after a legal relationship between the child and the adoptive parents is created by a final decree of adoption. *Helen G.*, 2008-NMSC-002, ¶ 35. Critically, however, that case did not address the status of a father whose consent had been implied under Section 32A-5-18(A) or the effect of a consent after it has been implicitly or voluntarily given because as we have explained, the father in *Helen G.* had no entitlement to give or withhold consent. As a result, *Helen G.* does not provide authority for the argument that Father's rights regarding Child in the present case remain intact until the entry of the adoption decree when his implied consent to this adoption has already been adjudicated.

**{14}** Our review of these consent provisions leads us to conclude that the Adoption Act does not contemplate a parent's further participation in an adoption adjudication after the required consents have been obtained. Consequently, we further hold that because the parent's consent to adopt has been secured, thus eliminating the right to participate in the adoption proceeding, parental rights have effectively been terminated—or relinquished, in the case of a voluntary consent—at that time. *See* Karen D. Laverdiere, *Content Over Form: The Shifting of Adoption Consent Laws*, 25 Whittier L. Rev. 599, 600 (2004) (explaining that in general, "the consent to adoption constitutes the relinquishment of parental rights" (internal quotation marks and citation omitted)).

## 2. Father's Status as a Biological Father

**{15}** Despite these statutory provisions, Father points to Section 32A-5-36(C) and contends that the district court must hear evidence on the merits of a petition "when a biological father appears to contest the adoption." Father misreads this section of the Adoption Act. Section 32A-5-36(C), in its entirety, provides for the following:

> If any person who claims to be the biological father of the adoptee has appeared before the court and filed a written petition or response seeking custody and assuming financial responsibility of the adoptee, the court shall hear evidence as to the merits of the petition. If the court determines by a preponderance of the evidence that the person is not the biological father of the adoptee or that the child was conceived through an act of rape or incest, the petition shall be dismissed and the person shall no longer be a party to the adoption. If the court determines that the person is the biological father of

5

the adoptee, the court shall further determine whether the person qualifies as a presumed or acknowledged father whose consent is necessary for adoption, pursuant to Section 32A-5-17[.] If the court determines that the person is the biological father, but does not qualify as a presumed or acknowledged father, the court shall adjudicate the person's rights pursuant to the provisions of the Adoption Act[.]

Father appears to interpret this language to mean that a biological father who has filed a response to a petition for adoption is entitled to participate in the district court's adjudication of the adoption petition. We disagree.

**{16}** Our Supreme Court has explained that Section 32A-5-36(C) addresses the situation where "a biological father who does not have the right to withhold consent to the adoption *seeks custody* of the adoptee at the hearing on the adoption petition." *Helen G.*, 2008-NMSC-002, ¶ 35. Father is an acknowledged father and not a biological father as defined by the statute. As such, Father had the right to withhold his consent to the adoption. Thus *Helen G.* and Section 32A-5-36(C) do not apply to Father. *See Helen G.*, 2008-NMSC-002, ¶ 35 (explaining that when a biological father who does not have the right to withhold consent wants his rights heard, he may file a petition or response seeking custody or assuming financial responsibility of the adoptee, in which case, "the district court shall adjudicate the person's rights" at the adjudicatory hearing (internal quotation marks and citation omitted)).

**{17}** Further, Section 32A-5-36(C) indicates that the district court shall adjudicate the objecting parent's rights. Father's rights have already been adjudicated under the Adoption Act: his consent to the adoption was implied. Based on Father's status as an acknowledged father, as well as the district court's previous determination of his rights under the Adoption Act, Section 32A-5-36(C) does not establish that any issue remains regarding Father's rights to Child.

### 3. Open Adoption

**{18}** Father also argues that because Grandparents alleged in the petition that the adoption will not be open, Section 32A-5-35(E) requires that the open adoption allegation—and, thus, Father's continued right to contact with Child—be proven at the adjudicatory hearing. Section 32A-5-35(A) permits the parents of the child and the petitioner to "agree to contact between the parents and the petitioner or contact between the adoptee and one or more of the parents or contact between the adoptee and relatives of the parents." The question of open adoption is therefore not reliant on a parent's right to contact with a child, but instead is based on an agreement between the adoptive parents and the biological parents. Although the district court will consider the open adoption issue at the adjudicatory hearing, nothing in the statute suggests that Father has a right to contest Grandparents' position on open adoption at that hearing. To the contrary, the statute indicates that in order to initiate an open adoption, Father and Grandparents must "agree to contact." Section 32A-5-35(A). Because an agreement between the parties is required, Father is foreclosed from appearing at the adjudicatory hearing and taking an adversarial stance on the question of open

6

adoption. Should the district court find at the adjudicatory hearing that an open adoption is in Child's best interests, such a finding would not resurrect Father's parental rights, which were terminated by the 2006 order on implied consent.

### 4. Actions of the Parties

**{19}** To support his interlocutory argument, Father points to the actions of Grandparents, the district court, and the guardian ad litem in continuing to treat him as a party to the adoption petition, despite Grandparents' position on appeal that Father's party status was terminated by the 2006 order. He relies on arguments and concessions made by Grandparents' counsel in the district court, the district court's actions and comments, and the opinion of the guardian ad litem. Grandparents counter by directing our attention to Father's actions, specifically Father's discussion of the finality of the 2006 order with the district court at the December 14, 2006 hearing and Father's agreement with the district court that the consent determination was a final, appealable order. Further, Father indicated an intent to appeal the order at that time. Despite these conflicting versions of the proceedings below, it is the responsibility of this Court to determine its own jurisdiction. *See Smith v. City of Santa Fe*, 2007-NMSC-055, ¶ 10, 142 N.M. 786, 171 P.3d 300. Finality is a prerequisite to this Court's jurisdiction and, therefore, finality presents a question of law. *See Children, Youth & Families Dep't v. Frank G.*, 2005-NMCA-026, ¶ 39, 137 N.M. 137, 108 P.3d 543 (explaining that "this Court would not have jurisdiction to hear an appeal from a non-final order"), *aff'd sub nom. In re Pamela A.G.*, 2006-NMSC-019, 139 N.M. 459, 134 P.3d 746; *Smith*, 2007-NMSC-055, ¶ 10 (observing that jurisdictional questions present issues of law).

**{20}** We answer the finality question by evaluating whether the substance of the order declares the rights and responsibilities of the parties to the controversy and not by examining the parties' expectations. *See Frank G.*, 2005-NMCA-026, ¶ 40 ("In determining finality for purposes of appeal, we are to look to the substance of the judgment, keeping in mind a policy of facilitating meaningful and efficient appellate review of issues that affect important rights[.]" (citations omitted)). Father's rights as to Child are delineated by the Adoption Act. According to the Act, the district court's order finding Father's implied consent put an end to his interest as a party to the adjudication of this petition for adoption—the behavior of the parties notwithstanding.

### 5. Procedural Irregularities

**{21}** Father contends that because of the procedural and statutory irregularities that he alleges occurred in this case, it would be unfair for this Court to conclude that the 2006 order is final and that he is no longer a party to the adoption proceeding. Specifically, Father contends that because he was not represented by counsel at the November 2006 consent hearing, he did not have an opportunity to present his case. We disagree.

**{22}** The only section of the Adoption Act that refers to the appointment of counsel is Section 32A-5-16(E), which refers to the termination of parental rights. This section requires the district court to "upon request, appoint counsel for an indigent parent who is

7

unable to obtain counsel or if, in the court's discretion, appointment of counsel for an indigent parent is required in the interest of justice." Father did not request counsel, and there is nothing in the record to indicate that Father was indigent at the time of the consent hearing or that justice required the appointment of counsel. The record demonstrates that Father participated in the November consent hearing, asked questions of the witnesses, testified, and made a statement on his own behalf. Thus, Father has not demonstrated that he was entitled to counsel. Father chose to represent himself at the beginning of the proceedings, and there is nothing in the record to show that an injustice occurred. *See Woodhull v. Meinel*, 2009-NMCA-015, ¶ 30, 145 N.M. 533, 202 P.3d 126 ("Although pro se pleadings are viewed with tolerance, a pro se litigant, having chosen to represent himself, is held to the same standard of conduct and compliance with court rules, procedures, and orders as are members of the bar." (internal quotation marks and citation omitted)), *cert. denied*, 2009-NMCERT-001, 145 N.M. 655, 203 P.3d 870.

### 6.    Finality Determination and Effect

**{23}**    Based on the foregoing analysis as well as the need for permanency, we conclude that the 2006 order finding Father's implied consent to the adoption was a final, appealable order. "[T]he term 'finality' is to be given a practical, rather than a technical, construction." *Kelly Inn No. 102, Inc. v. Kapnison*, 113 N.M. 231, 236, 824 P.2d 1033, 1038 (1992), *limited on other grounds by Trujillo v. Hilton of Santa Fe*, 115 N.M. 397, 398, 851 P.2d 1064, 1065 (1993). The most practical means of recognizing a parent's rights while at the same time providing the petitioner and the child with some permanency is to require the parent to immediately appeal a final determination of implied consent.

**{24}**    As a result of this holding, we do not address Father's position that the June 2008 amended order properly amended the 2006 order. A final order, once it is entered, cannot be altered or amended except by motion to vacate or modify, by motion under Rule 1-060 NMRA, or by application under Rule 1-059 NMRA. *See St. Clair v. County of Grant*, 110 N.M. 543, 549, 797 P.2d 993, 999 (Ct. App. 1990). Father does not argue that any of these exceptions to finality apply to the 2008 amended order. Absent any applicable exception, our holding that the 2006 order was a final order is dispositive.

### B.    Lack of Signature on the 2006 Order

**{25}**    Father additionally argues that even if the 2006 order was a final order, it is void because it lacked the signature of his counsel that is required under LR5-202(C) NMRA and Rule 1-058(C) NMRA. We are unpersuaded.

**{26}**    Rule 1-058(C) provides that "before the court signs any order or judgment, counsel shall be afforded a reasonable opportunity to examine the same and make suggestions or objections." The record shows that Father's counsel had such an opportunity. The content of the 2006 order was the subject of the December 2006 hearing on Father's motion to reconsider. Father argues that "being present at a hearing on a different motion does not constitute consent to enter" the 2006 order. We disagree. Counsel for Father, counsel for Grandparents, and the court had the order in front of them at the hearing. Father was able

8

to object and in fact did. His primary argument was that the district court did not have jurisdiction to enter the order based on the failure to appoint a guardian ad litem. There was no argument that the order did not accurately reflect the decision of the court following the hearing on Grandparents' motion to imply Father's consent. The district court ruled against Father on the jurisdictional argument and informed the parties that he would sign the order in the form presented by Grandparents' counsel. Thus, based on the facts of this case, we are satisfied that the district court complied with Rule 1-058(C).

{27}    Father also relies on LR5-202(C), which states that

> [o]rders and judgments will not be signed by the judge unless they have been initialed by attorneys for all parties to the cause or pro se parties. Should the attorney for any party fail or refuse to so initial a proposed order or judgment within five (5) working days, the attorney submitting the proposed order shall certify to the court that opposing counsel or pro se party has failed or refused to initial the same.

While we agree that the 2006 order did not have the initials of Father's counsel, Father does not provide any authority for his position that this failure automatically renders the order void. *See Stockton v. N.M. Taxation & Rev Dep't*, 2007-NMCA-071, ¶ 16, 141 N.M. 860, 161 P.3d 905 (declining to address arguments that are unsupported by authority).

{28}    In addition, the purpose behind Rule 1-058 and LR5-202(C) is to ensure that the parties have notice of the language on an order before its entry so that if there is a disagreement, a presentment hearing can be held. If there is a presentment hearing or equivalent, which occurred in this case, the purpose of the rules is met. Here, the parties received notice of the proposed order and were allowed to assert their arguments. In the event of a conflict, Rule 1-058 as the statewide rule would control over the local rule. Rule 1-083 NMRA (mandating that "[l]ocal rules and forms shall not conflict with, duplicate or paraphrase statewide rules or statutes"). Accordingly, we conclude that Grandparents and the district court sufficiently complied with Rule 1-058 and that the lack of initials did not render the order void.

{29}    **IT IS SO ORDERED.**

_____
**CELIA FOY CASTILLO, Judge**

**WE CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**MICHAEL E. VIGIL, Judge**

**Topic Index for** *Homer F. and Joyce F. v. Jeremiah E.*, **No. 28,694**

| | |
|---|---|
| **CD** | **CHILDREN** |
| CD-TR | Termination of Parental Rights |
| | |
| **CP** | **CIVIL PROCEDURE** |
| CP-FO | Final Order |
| | |
| **DR** | **DOMESTIC RELATIONS** |
| DR-AD | Adoption |
| DR-PR | Parental Rights |
| DR-TL | Time Limitations |