This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**JOHNSON & DANLEY CONSTRUCTION CO., INC., a New Mexico corporation and MEADOW VALLEY CONTRACTORS, INC., a Nevada corporation,**

Plaintiffs-Appellees/Cross-Appellants,

v.

NO. 29,575

**THE STATE OF NEW MEXICO ex rel. NEW MEXICO DEPARTMENT OF TRANSPORTATION f/k/a New Mexico State Highway and Transportation Department,**

Defendant-Appellant/Cross-Appellee.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**Jerry H. Ritter, Jr. , District Judge**

Law Office of Jane B. Yohalem
Jane Bloom Yohalem
Santa Fe, NM

for Appellees/Cross-Appellants

Sutin, Thayer & Browne, P.C.
C. Shannon Bacon

Kerry Kiernan

Albuquerque, NM

for Appellant/Cross-Appellee

**MEMORANDUM OPINION**

**WECHSLER, Judge.**

Defendant, in its appeal, and Plaintiffs, in their cross appeal, assert that the district court erred in issuing an order modifying the settlement agreement between the parties. Defendant argues that the district court erred by failing to enforce the agreement as written and by supplying additional terms that it believed had been omitted by the parties. [Def.'s DS 18-27] Plaintiffs argue that, based on the parties' past use of language and course of dealings, the district court should have interpreted the agreement to mean that Defendant would pay the full amount of any gross receipts taxes owed on the settlement, in addition to the stated settlement amount. [Pls.' DS 14-15] In this Court's notice of proposed summary disposition, we proposed to reverse and to hold that nothing in the agreement required Defendant to pay any amounts above the $10 million provided for in the settlement agreement. Defendant timely responded with a memorandum in support. Plaintiffs have responded with a memorandum in opposition, pursuant to the grant of an extension of time. We have considered Plaintiffs' arguments, and as we are not persuaded by them, we reverse and

hold that the agreement should be enforced as written.

**I.     The Agreement Is Not Ambiguous**

The settlement agreement provided that:

> The NMDOT will pay, and J&D and MVCI . . . will accept, the total sum of Ten Million and no/100 dollars ($10,000,000) as complete, full and final settlement and resolution of all claims, demands, causes of action, judicial orders, change order requests, pay requests, pay applications or other additional payment or compensation of any kind or description . . . arising out of or in anyway [sic] connected with the construction . . . commonly referred to collectively as the Alamogordo Relief Route Projects, and any claims arising there from, said amount to be allocated and divided by and between J&D and MVCI and any others claiming through either of them as J&D and MVCI . . . separately decide and agree without further involvement or liability on the part of the NMDOT.
>
> . . . .
>
> No other claim for money due or owed, extra time, reimbursement, damages, changes, payment or other recompense of any kind or description shall survive this settlement, it being the express intent of J&D, MVCI and NMDOT to fully, finally and forever resolve any liability on the part of the NMDOT to J&D and/or MVCI and any other person or entity claims by or through them arising out of CN 1970 and CN 3650.

[RP 3998, 3999]   The district court concluded that on its face, this language was unambiguous in setting Defendant's settlement obligation at $10 million.   [RP 4118] In our notice of proposed summary disposition, we proposed to conclude that the

language was unambiguous and that no evidence was presented regarding the parties' negotiations, use of language, or course of dealing that would create an ambiguity. In their memorandum in opposition, Plaintiffs assert that the contract language is in fact ambiguous and that the evidence establishes that the parties intended that Defendant would pay gross receipts taxes in addition to the $10 million. Plaintiffs begin their argument by asserting that a portion of the $10 million settlement amount is properly characterized as a payment for construction services for tax purposes. [Pls'. MIO 3-7] Plaintiffs rely on several federal tax cases for this proposition. [Pls.' MIO 4, 6 n.3] We do not necessarily disagree; that simply is not the issue before us, so we make no determination as to whether and, if so, what portion of, the $10 million payment is taxable as a payment on the construction contract. We merely indicated in our notice of proposed summary disposition that an agreement to settle a lawsuit serves a different purpose than would an undisputed payment on the underlying contract and that we did not believe that a course of dealing as to payments on the underlying contract should control our interpretation of the settlement agreement. In our notice, we pointed out that Plaintiffs cited no authority contrary to this proposition, and as Plaintiffs still have not done so, we may presume that none exists. *See In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984)

(indicating that when a party cites no authority in support of a proposition, we may presume that no such authority exists); *see also Hennessy v. Duryea*, 1998-NMCA-036, ¶ 24, 124 N.M. 754, 955 P.2d 683 ("Our courts have repeatedly held that, in summary calendar cases, the burden is on the party opposing the proposed disposition to clearly point out errors in fact or law.").

Furthermore, even if we were to consider the fact that Defendant was obligated to pay the gross receipts taxes on payments received under the underlying construction contracts, we still do not believe that this creates any ambiguity in the settlement agreement. Plaintiffs do not point to anything in the language of the agreement itself that is actually ambiguous—even in light of such a prior course of dealing. Plaintiffs suggest that the ambiguous term in the contract is the term that the payment is "full and final." [Pls.' MIO 14] We do not find this argument persuasive. There is simply nothing in this term of the agreement that would suggest that Defendant had agreed to pay an amount above the $10 million figure. Although Plaintiffs rely on various instances in the past in which Defendant has been responsible for paying gross receipts taxes, Plaintiffs cannot connect this past conduct with any term of the current contract to suggest that there is any ambiguity in the settlement agreement regarding an additional payment of gross receipts taxes on top of the $10 million settlement sum.

## II. The Agreement Contains No Provisions that Relate to the Payment of Gross Receipts Taxes

Rather than an ambiguous term in the contract, it seems that what Plaintiffs are really pointing to is silence on the issue of gross receipts taxes: Plaintiffs state that "[a]lthough the settlement agreement specifies that it is intended to resolve all liability, and provides for a 'full and final' settlement, the language of the settlement agreement *does not mention* gross receipts taxes." [Pls.' MIO 9 (emphasis added)] Plaintiffs call this failure to mention the taxes "silence" on the issue, something that "is not included . . . or otherwise mentioned," and an "absence." [Pls.' MIO 9] Therefore, we must determine whether this silence requires that Defendant be responsible for any payments for gross receipts taxes on the settlement.

### A. The Agreement Does Not Contain the Type of Omitted Term that May Be Supplied by the Courts

In our notice of proposed summary disposition, we proposed to conclude that the agreement's silence on the issue of gross receipts taxes was not the sort of omission of a material contract term that would justify the addition of a term by the courts. In light of the undisputed fact that the parties never discussed gross receipts taxes during their negotiations, we indicated that we did not see how Plaintiffs'

unarticulated desire to have Defendant pay additional amounts would create a material omission in the agreement, as this was not a case in which a term that is essential to a determination of the parties' rights and responsibilities under the contract has been left out. *Cf. Smith v. Galio*, 95 N.M. 4, 7, 617 P.2d 1325, 1328 (Ct. App. 1980) (holding that when contract is silent as to the time for performance, a reasonable time will be implied by the district court). We pointed out that Plaintiffs cited no authority to suggest that an express term covering gross receipts taxes is necessary in a settlement agreement such as this one or that the agreement was unreasonable or could not be carried out in the absence of such a term. *See In re Adoption of Doe*, 100 N.M. at 765, 676 P.2d at 1330. Therefore, we proposed to hold that the district court erred in supplying terms for which the parties had not bargained and to which they had not agreed.

In response, Plaintiffs do not argue that a term regarding gross receipts taxes is material to the contract such that the parties cannot carry out their obligations under it unless the courts supply such a term. [Pls.' MIO 17-18] Instead, Plaintiffs suggest that the silence on the issue of gross receipts taxes should be understood to mean that Defendant intended to agree to pay gross receipts taxes on the portion of the settlement that could be characterized as a payment on the construction contract in

7

addition to the $10 million settlement amount. [Pls.' MIO 10-18] In effect, Plaintiffs are asking this Court to find that this term is an implied term of the contract based on the parties' intent as evidenced by their past conduct. *See Estate of Griego ex rel. Griego v. Reliance Standard Life Ins. Co.*, 2000-NMCA-022, ¶ 21, 128 N.M. 676, 997 P.2d 150 ("A contract includes not only the promises set forth in express words, but, in addition, all such implied provisions as are indispensable to effectuate the intention of the parties and as arise from the language of the contract and the circumstances under which it was made."). Plaintiffs assert that the value of the construction contract payments was $750,000 and that, under the prior course of dealing (and under Defendant's standard specifications for highway construction contracts) Defendant would pay the gross receipts taxes on this amount, even if the construction contract was silent on the issue of taxes. [Pls.' MIO 5, 10]

We decline to find that such a term is implied. Courts generally enforce contracts as written, and we are reluctant to add terms to an agreement unless the term is truly necessary or it is clear that the parties actually intended that the term be included. *See Estate of Griego ex rel. Griego*, 2000-NMCA-022, ¶ 21 ("A court may have to imply terms in a contract when to do otherwise would render the contract absurd and meaningless."); *Twin Forks Ranch, Inc. v. Brooks*, 1998-NMCA-129, ¶ 20,

125 N.M. 674, 964 P.2d 838 (stating that courts are unwilling to rewrite contracts to add terms unless the evidence is clear and convincing that the added term was what the parties actually intended and agreed upon).  This case does not present such a circumstance. We find nothing in the record to suggest that the parties actually agreed or intended to agree to settle the claim for any more than the stated $10 million.  We note that the district court did not believe that the parties agreed to do what Plaintiffs suggest either, as the district court found there was no meeting of the minds on gross receipts taxes and as its added terms did not require Defendant to pay gross receipts taxes on the $750,000, and instead only required Defendant to pay gross receipts taxes in the event that any amount of the settlement *above* $750,000 was taxed as a payment on the construction contract.  [RP 4118]

If Plaintiffs wanted to add an additional term requiring Defendant to pay gross receipts taxes in addition to the $10 million settlement payment, they should have raised this issue during negotiations in order to seek to reach an agreement with Defendant on the matter.  *See WXI/Z Sw. Malls Real Estate Liab. Co. v. Mueller*, 2005-NMCA-046, ¶ 22, 137 N.M. 343, 110 P.3d 1080 ("[The defendants/assignors of the lease at issue] were free to insist on a notice requirement or any other condition or limitation in their guaranty, but having failed to do so, this Court will not write such

a condition in after the fact.").  We hold that the district court erred in supplying terms that were neither negotiated by the parties nor necessary to make up for any omission in the agreement that was actually negotiated, and we decline to find any other implied terms regarding the payment of gross receipts taxes.

**B.      Plaintiffs' Unarticulated Expectation that Defendant Would Pay the Gross Receipts Taxes in Addition to the $10 Million Settlement Amount Does Not Control the Meaning of the Contract**

Plaintiffs rely on *Pope v. Gap, Inc.*, 1998-NMCA-103, ¶ 13, 125 N.M. 376, 961 P.2d 1283, to argue that even if the parties did not actually agree that Defendant would pay gross receipts taxes on top of the settlement amount, Defendant is bound by Plaintiffs' expectation that Defendant would do so because Defendant should have known that Plaintiffs would think that silence on the issue meant that Defendant would pay the taxes, and Plaintiffs had no reason to know that Defendant would not interpret the contract in this way.  [Pls.' MIO 16-17]  In *Pope*, this Court applied the principle that when parties disagree about the terms of a contract, "[t]he manifestations of the parties are operative in accordance with the meaning attached to them by one of the parties if . . . that party has no reason to know of any different meaning attached by the other, and the other has reason to know the meaning attached by the first party."  *Id.* (first alteration in original) (internal quotation marks and

citation omitted).

We conclude that this principle does not require that the agreement be interpreted in light of Plaintiffs' unstated expectation. In our notice of proposed summary disposition, we pointed out that the prior practice of the parties with respect to settlement agreements had been to include an express provision stating that Defendant would be responsible for gross receipts taxes when the parties intended Defendant to pay them in addition to the settlement amount itself. Plaintiffs respond that this is not the only evidence of the parties' past practice with respect to settlements, since in two previous settlements, there was no discussion of who would pay the gross receipts taxes, and Defendant paid them. [Pls. MIO 12-13] We note that these two previous "settlements" are not negotiated settlement agreements and, instead, reflect Defendant's internal administrative resolution of claims. [RP 4064-65, 4081, 4088] These dispute resolutions did not involve the settlement of a lawsuit and did not require a negotiated settlement agreement. Therefore, we do not believe that these resolutions shed light on the issue of whether either of the parties would interpret silence in a settlement agreement regarding any additional payments of gross receipts taxes to mean that Defendant would make an additional payment of the gross receipts taxes on top of the settlement amount. The only negotiated settlement

11

agreement between the parties shows that when the parties agree that Defendant will pay the gross receipts taxes in addition to a base amount to settle the lawsuit , the parties include an express provision in their agreement so providing. [RP 4094] Based on this evidence, Plaintiffs had a reason to know that Defendant was likely to believe that it would only pay gross receipts taxes on top of the settlement amount if it expressly agreed to do so as part of the settlement agreement. *Pope* does not require that Plaintiffs' unstated expectation be enforced.

## III.    On Remand

Defendant asks this Court to instruct the district court to enter a particular factual finding and conclusion of law on remand. [Def.'s MIS 6] Defendant is apparently concerned about two factual findings made by the district court regarding the amount of the $10 million settlement payment that should be characterized as a payment for construction services. [Def.'s MIS 4-5 n.1] We decline to state any opinion on these factual findings as they were not challenged on appeal in Defendant's docketing statement, *see Stueber v. Pickard*, 112 N.M. 489, 491, 816 P.2d 1111, 1113 (1991) (stating that an unchallenged finding of the district court is binding on appeal), and we will not instruct the district court on the particular findings and conclusions it should enter on remand.

**IV.    Conclusion**

Accordingly, for the reasons stated in this opinion and in our notice of proposed summary disposition, we reverse and remand for entry of an order consistent with this opinion.

**IT IS SO ORDERED.**


_____
**JAMES J. WECHSLER, Judge**

**WE CONCUR:**


_____
**CYNTHIA A. FRY, Chief Judge**


_____
**ROBERT E. ROBLES, Judge**

13